SECH, EXECUTRIX, APPELLANT, *v.* ROGERS, APPELLEE.

[Cite as Sech *v.* Rogers (1983), 6 Ohio St. 3d 462.]

(No. 82-1506—Decided September 7, 1983.)

*Messrs. Butler, Cincione, DiCuccio & Dritz, Mr. N. Gerald DiCuccio, Mr. Stanley B. Dritz* and *Mr. David B. Barnhart,* for appellant.

*Messrs. Menapace & Sheppard, Mr. Alan Wayne Sheppard* and *Mr. David G. Bale,* for appellee.

*Per Curiam.* The first issue presented is whether the trial court's instruction to the jury, on the right of way, was erroneous. Appellant claims that the trial court's amended instruction to the jury, on the right of way, is an incorrect statement of the law because the definitions given of roadway and highway erroneously included the paved portion thereof, to the right of the white line. For the reasons set forth below, we disagree.

A jury instruction must be considered in its entirety and, ordinarily, reversible error does not consist of misstatements or ambiguity in a part of the instruction. *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31 [44 O.O.2d 18]. Hence we begin by reviewing the trial court's charge and amendment thereto:

"Now, I want to quote to you a certain statute which you may find pertinent to this particular case.

"This incident occurred either on or adjacent to a highway or street. Street or highway means the entire width between the boundary lines of every way open to the public as a thoroughfare for the purpose of vehicular travel. Roadway means that portion of a highway improved or designed or ordinarily used for vehicular travel except the berm or shoulder.

"A lane of a highway means a highway, the road of which is divided into two or more clearly marked lanes for vehicular traffic. Now, the evidence, the pictures, the Exhibits and so on have established that this is a two-laned highway, one for traffic going east and one for traffic going west.
"\* \* \*

"Now, as a matter of law, if you find that that Plaintiff — I am sorry, that the Defendant, Mrs. Rogers, was operating on the hard surface of the highway, then there is no indication that she was speeding, and she would have had the right-of-way as a matter of law because the evidence would indicate if you accept her statements or her version, that the other people who were moving into her path, that she had a right to continue in the direction that she was going.

"Now, the problem here, of course, in this case, is that we have two diametrically opposed stories, so my charge, hopefully, will apply to whichever one you would — you would apply my charge to the interpretation of the facts as you arrive at the interpretation of such facts in your deliberations in the case, and we are still talking about the issue of liability or responsibility."

After a request for correction by appellant, the trial court stated:

"Apparently I used one word that could be misunderstood. When I talked about the hard surface of the highway, to me, hard is paved, so quote, it is the paved surface of the highway that we are talking about, not the gravel, if

any, or grass, if any, or what was commonly referred to in the book as berm, but beyond that I think my charge was okay.''

The trial court's instruction is a correct statement of the law because it used the appropriate definitions set out in the Revised Code, for highway (R.C. 4511.01[BB]); roadway (R.C. 4511.01[EE]); laned highway (R.C. 4511.01[GG]); and right of way (R.C. 4511.01[UU]). Although the trial court, in its clarification of the law, could have repeated the definition of laned highway, we do not find this omission to be sufficiently confusing or ambigious to mislead the jury, warranting reversal, because as a general rule the additional instruction must be considered in conjunction with the original instruction which, in this case, properly defined roadway and laned highway. See *Snyder* v. *Stanford, supra.*

Furthermore, there is no evidence at any point in this case that the curved guardrail, which struck Sech, was resting between the white line and the end of the pavement. Nor is there any evidence that appellee operated the bus on or over the white line. Accepting appellee's version of this accident, she never operated the bus to the right of the white line. Accepting appellant's version of this accident, the bus driver clearly drove outside the highway and roadway, as defined by statute, before hitting the curved guardrail which struck decedent.

Appellant's version of the accident was clearly rejected by the jury in its answer to the first interrogatory concerning appellee's alleged negligence. Hence, even if we assumed that the trial court's instruction was erroneous, there is no showing of prejudice here.

The second issue presented here is whether the trial court committed prejudicial error in refusing to instruct the jury on the doctrine of last clear chance.

Our court has held in the sixth and seventh paragraphs of the syllabus in *Peters* v. *B. & F. Transfer Co.* (1966), 7 Ohio St. 2d 143 [36 O.O.2d 180]:

"Where a plaintiff, by his own fault, caused himself to be placed in a perilous situation, he may recover under the rule of the 'last clear chance' notwithstanding his negligence, if the defendant did not, after becoming aware of plaintiff's perilous situation, exercise ordinary care to avoid injuring him. (Paragraph one of the syllabus of *Cleveland Ry. Co.* v. *Masterson,* 126 Ohio St. 42, approved and followed.)

"For the doctrine of 'last clear chance' to be applicable it must be proved that the defendant became aware that plaintiff was in a position of peril at a time and distance when, in the exercise of ordinary care, he could have avoided injuring plaintiff.''

The facts in this case indicate the peril arose after the guardrail was swung into the path of the bus. The bus driver testified that, after becoming aware of the peril, she did everything in her power to avoid hitting the guardrail. Viewing the evidence most favorably to appellant, there was no evidence that appellee had time or was able to avoid injuring the decedent after becoming aware of the peril. Thus, the evidence does not warrant the ap-

plication of the doctrine of last clear chance. Consequently the trial court did not err in refusing to instruct the jury on the last clear chance doctrine.

The third issue presented is whether the trial court erred in instructing the jury on the doctrine of assumption of the risk.[1]

This court has defined assumption of the risk as follows:

"Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created." *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, 174-175 [51 O.O.2d 232].

There is no evidence in the record indicating that the three elements of *Briere* have been established by either appellant or appellee's respective versions of what occurred. If the decedent was standing behind the posts, he certainly did not assume the risk of appellee operating the bus off the road and hitting the guardrail which struck and killed him. Conversely, if decedent and Mugrage were carrying the guardrail and swung it into the path of the bus, the doctrine of contributory negligence may be applicable here, but not the doctrine of assumption of the risk. Decedent cannot be said to have assumed the risk of injury simply because he was involved in his work and not watching for approaching vehicles. Decedent may have failed to appreciate the consequences of his action, but he did not assume the risk of injury. Hence, the facts do not warrant the application of the doctrine of assumption of the risk. Consequently, the trial court erred in instructing the jury on the doctrine of assumption of the risk. However, we find such error not to be prejudicial in view of the jury's answer to the first interrogatory finding that the appellee was not negligent. This answer resolved the dispositive issue in this case obviating the need for the jury to address the affirmative defenses, including assumption of the risk. Consequently, the trial court's instruction on assumption of the risk was immaterial as was the jury's failure to answer the interrogatory pertaining to this issue. *Skyway Aviation Corp.* v. *Minneapolis, N. & S. Ry. Co.* (C.A. 8, 1964), 326 F. 2d 701.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur.

SWEENEY and C. BROWN, JJ., dissent.

---

[1] By reason of our recent holdings in the trilogy of *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, and *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, this case would now be tried under the comparative negligence standard contained in R.C. 2315.19.

CLIFFORD F. BROWN, J., dissenting. The judgments of the lower courts in favor of appellee should be reversed because of an inaccurate and confusing instruction on the definition of roadway which was prejudicial to appellant. The jury instruction given was equivalent to a directed verdict for appellee because in substance it charged the jury that appellee had a right to drive the bus upon the berm of the highway and had the right of way over appellant's decedent when so operating her bus.

In connection with the jury instruction concerning the roadway and right of way as set forth in the majority opinion, the evidence indicates that the roadway had two lanes with a center line, together with a solid white line delineating the right extremity of appellee's lane, but with pavement extending a few feet beyond such white line. Appellant contended that, under such circumstances, the lane of travel for the motorist is defined by the center line and the right white line. The trial court recognized the interpretation but stated:

"Well, gentlemen, I said the hard surface, meaning the paved surface. I do not agree with your theory, * * * that space outside — that white line almost contiguously to the line of the hard surface is not a part of the hard road.

"* * *

"I will change the word to paved, because it could be gravel — but I will not make it to the white line."

Counsel again objected and contended that the traveled portion of the highway is that which exists between the white lines. The trial court's refusal to give this instruction was patent and clear error. The effect of the trial court's charge was that appellee could be operating her vehicle to the right of the solid white line delineating the right boundary of her lane of travel and still enjoy the benefit of the right of way over appellant's decedent, so long as her tires remained on the pavement, rather than gravel. Faced with such an instruction, the jury had little choice but to return a verdict for appellee upon the issue of negligence, inasmuch as there was no evidence that the wheel of her bus ever was off the pavement, even though there was evidence that her wheel was to the right of the solid white line. Accordingly the requested clarification of the law was of crucial importance to appellant's case.

R.C. 4511.01 (EE) defines "roadway," as follows: "* * * that portion of a highway improved, designed, or ordinarily used for vehicular travel, except the berm or shoulder. * * *"

R.C. 4511.01 (GG) states: " 'Laned highway' means a highway the roadway of which is divided into two or more clearly marked lanes for vehicular traffic."

R.C. 4511.33 provides that:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic * * * the following rules apply:

"(A)  A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or

line until the driver has first ascertained that such movement can be made with safety."

The purpose of the solid white line near the right edge of the paved portion of the highway is to designate the portion of the highway designed for vehicular travel.

Construing the evidence favorably for appellant, the jury reasonably could have found that appellee drove her bus in such a manner that the right wheels were to the right of the solid white line delineating the right boundary of the roadway and separating it from the berm or shoulder. Under the trial court's instruction, the jury would have been required to find for appellee upon the issue of negligence, even if it made this finding. Since the trial court refused to correct this erroneous instruction, even when specifically requested by appellant's counsel, this constituted prejudicial error justifying a reversal.

Further, the trial court prejudicially erred in instructing the jury on the doctrine of assumption of risk. In *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, we merged the common-law defense of assumption of risk into the comparative negligence statutory scheme contained in R.C. 2315.19. In *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, we adopted the comparative negligence standard set forth in R.C. 2315.19 as a modification of the common-law standard in Ohio, and held that this comparative negligence standard shall be applied to all negligence actions, irrespective of the occurrence date. *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206.

Although the injury and death of appellant's decedent caused by appellee in this case occurred in 1979, the trial took place in March 1981, long after the effective date of the comparative negligence provisions of R.C. 2315.19 on June 20, 1980. By reason of our recent holdings in the trilogy of *Wilfong, Anderson* and *Hirschbach, supra,* the defendant was required to be tried under the provisions of comparative negligence contained in R.C. 2315.19. Therefore, it was error to instruct the jury on the principles of contributory negligence as a complete bar to recovery as well as assumption of risk.

Accordingly, the discussion by this court of the former principle of assumption of risk and its elements is irrelevant, and *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166 [51 O.O.2d 232], has by implication been overruled by the *Anderson* case, *supra.*

A reversal of the judgment of the lower courts is required in order to make our decision here consistent with the recent holding in *Hirschbach* v. *Cincinnati Gas & Elec. Co., supra.*

Accordingly, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.