## Scandinavian Health Spa
v.
## Civil Rights Commission
*[Cite as 2 AOA 349]*

Case No. 56593
Cuyahoga County, (8th)
Decided March 1, 1990

R.C. 4112.02
R.C. 4112.05

David Roloff Gaines & Stern Co., L.P.A. 1700 Ohio Savings Plaza, 1801 East Ninth Street, Cleveland, Ohio 44114, For Appellant.

Jeffrey B. Rubenstein, Assistant Attorney General Civil Rights Section, 35 East 7th Street, Suite 400 Cincinnati, Ohio 45202.

Barbara Carter Hamm, 2591 Lewis Drive Amelia, Ohio 45102, For Appellees.

NAHRA, J.

This case evolves from a charge of employment discrimination and sexual harassment filed with the Ohio Civil Rights Commission (hereinafter the "Commission") by Barbara Carter Hamm against Scandinavian Health and Racquet Clubs, Inc. (hereinafter Scandinavian"). Scandinavian appeals thee affirmance by the Common Pleas Court of the Commission's finding in favor of Ms. Hamm.

Ms. Hamm began working with Scandinavian in August of 1983 as a future manager at the Montgomery "Executive Club," then under construction, and continued there until May 4, 1984 when the club held its grand opening. During the nine-month period of her

employment, Ms. Hamm was in a "pre-sale" situation in which she sold membership to prospective clients from Scandinavian's trailer-office. During this period, she was an outstanding salesperson achieving salesperson of the month twice. Ms. Hamm was considered very professional by co-workers because she closed most of her sales and obtained referrals from many professional people.

Throughout her employment Ms. Hamm and other female employees were subjected to sexual harassment by Mr. Darryl Jones, the Club Manager at Montgomery, and Mr. Steve Currier, the Area Director. Women employees were subjected to continuous, sexually explicit, vulgar language from Darryl Jones. Such vulgarities were often accompanied by obscene gestures. Degrading remarks were often directed at Ms. Hamm, both privately and publicly. Mr. Jones commented at a morning sales meeting that Ms. Hamm looked "like she had been laying out all night." In November, 1983, Jones propositioned Ms. Hamm by suggesting that she "go home and stay all night with him." In January and February of 1984, Mr. Jones smacked Ms. Hamm on her buttocks and grabbed her around the waist in the office.

During sales meetings, Ms. Hamm and other female workers were also subjected to vulgar language by Mr. Currier.

On May 4, 1984, Mike Palumbo, a part-owner of Scandinavian, came to the Montgomery Club for its grand opening. Palumbo propositioned Ms. Hamm and another female employee, Ms. Kelly Richardson, and suggested that they go out and have sex in the back seat of his limousine.

Ms. Hamm found all such incidents quite offensive and the work environment difficult because of the pervasive sexual harassment.

Ms. Hamm rejected the advances by Mr. Jones and complained to the Division Manager, Ms. Kris Schultze, on several occassions; Ms. Schultze responded that she did not know what to do about it. When Ms. Hamm complained to Mr. Currier, he just stared at her, switched the topic of conversation, and did nothing to correct the problem.

Ms. Richardson, a co-worker of Ms. Hamm, testified that the verbal vulgarities and harassment bothered all the female employees but they "had to laugh it off" because they would otherwise risk hurting their positions or losing their jobs. Ms. Richardson testified that Ms. Hamm reacted differently to the harassment than the other, younger female employees insofar as she would not put up with it and told Mr. Jones to be quiet.

During the spring of 1984, Scandinavian made its employees at Montgomery aware that sales positions would be available for another pre-sale in Cleveland for top producers. On June 10, 1984, Ms. Hamm applied for the transfer; on the next day Ms. Hamm was approved for the position in Cleveland by Mr. Currier.

However, on June 14, 1984, Mr. Jones told her that he no longer wanted her to work at the Montgomery Club and that she was on a "permanent vacation". On June 22, 1984, Mr. Jones told Ms. Hamm that she would not be going to Cleveland and conveyed an offer to her of future manager at the Club in Colerain. Ms. Hamm decided not to accept the transfer to Colerain because she believed her income would be substantially less there and it would require an additional twenty-five to thirty-five minute drive each way.

On July 23, 1984, Ms. Hamm filed a charge against Scandinavian with the Ohio Civil Rights Commission (hereinafter the "Commission" or "OCRC") alleging that Scandinavian had engaged in unlawful employment discrimination by sexually harassing her and wrongfully terminating her because of her sex.

After an investigation, the Commission issued a complaint on July 16, 1985 and specifically charged that Scandinavian had subjected Ms. Hamm to sexual harassment and abusive language, and had discharged her in violation of R.C. 4112.02(A).

On December 16th and 17th, 1985, a hearing was conducted before an examiner who issued his findings of fact, conclusions of law, and recommendations to the Commission on May 19, 1986.

On August 14, 1986, the Commission issued its order and determined that reliable, probative and substantial evidence established that Ms. Hamm had been sexually harassed and terminated because of her sex, and ordered reinstatement and back pay for her. The Commission also ordered Scandinavian to cease and desist from all discriminating practices, and to adopt a written policy dealing with sexual harassment.

On September 19, 1986, Scandinavian appealed the Commission's order in the Cuyahoga County Court of Common Pleas. On April 6, 1988 the court below affirmed the Commission's order in all respects. This appeal follows.

I.

Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN AFFIRMING A DECISION OF THE OHIO CIVIL RIGHTS COMMISSION WHICH AWARDED THE COMPLAINANT BACK PAY WHERE THE COMPLAINANT VOLUNTARILY QUIT HER JOB AND SUFFERED NO FINANCIAL HARM.

Scandinavian argues that Ms. Hamm voluntarily quit her job and that she was not constructively discharged.

A constructive discharge exists if an employee's working conditions are so difficult or unpleasant that a reasonable person would feel compelled to resign. *See Riddle v. Newton Falls Exempted Village Board of Education* (Oct. 7, 1988), Trumbell App. No. 4004, unreported; *Held v. Gulf Oil Co.* (C.A. 6, 1982), 684 F.2d 427, 432. Such a determination requires a case by case analysis and an "inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee". *Henry v. Lennox Industries, Inc.* (C.A. 6, 1985), 768 F.2d 746, 752, quoting *Held v. Gulf Oil Company* (C.A. 6, 1982), 684 F.2d 427, 432.

Here, the evidence reveals that the proposed job transfer to Colerain was not a comparable position to Ms. Hamm's position at the Montgomery Club. Ms. Hamm would have incurred a significant loss of earning potential by being transferred to Colerain, a smaller club where it was documented that the top salespeople earned substantially less in sales commissions than at Montgomery. In addition, an aggravating condition existed for Ms. Hamm insofar as she was subjected to repeated and continuous verbal and physical sexual harassment by male superiors at Scandinavian. As a result, we find that a constructive discharge occurred because a reasonable person in Ms. Hamm's shoes would feel compelled to resign given the intolerable conditions and that the reasonable employer would foresee such a response.

Scandinavian also maintains that their back pay liability was terminated upon offering Ms. Hamm the same job at Colerain as the one she held at Montgomery. *See South Wind Motel v. Ohio Civil Rights Comm.* (1985), 24 Ohio App.3d, paragraph four of the syllabus, 494 N.E.2d 1158. However, as mentioned above, the record reveals that the job offered to Ms. Hamm was not the same job as the one she held at the Montgomery Club and offered a much lower prospect of financial gain. Ms. Hamm also made every effort to mitigate her damages by finding employment at the Chamber of Commerce.

Therefore, appellant's first assignment of error is overruled.

II.

Appellant's second and third assignments of error state:

II. THE TRIAL COURT ERRED IN AFFIRMING A DECISION OF THE OHIO CIVIL RIGHTS COMMISSION WHERE THE COMMISSION COULD NOT MEET THE ELEMENTS OF A PRIMA FACIE CASE OF SEX DISCRIMINATION.

III. THE TRIAL COURT ERRED IN AFFIRMING A DECISION OF THE OHIO CIVIL RIGHTS COMMISSION WHICH FAILED TO EVEN DISCUSS THE FACT THAT THE APPELLANT ARTICULATED LEGITIMATE NON-DISCRIMINATORY REASONS FOR THE COMPLAINANT NOT BEING TRANSFERRED.

R.C. 4112.02(A) provides in pertinent part that:

"It shall be an unlawful discriminatory practice:

"(A) For an employer because of the . . . sex . . . of any person, to discharge without just cause, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment . . . .

In order to support a finding of discrimination under R.C. 4112.02(A), the findings and orders of the Commission must be supported by reliable, probative, and substantial evidence. *Plumbers & Steamfitters v. Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, paragraph two of the syllabus, 421 N.E.2d 128; *South Wind Motel v. Ohio Civil Rights Comm.* (1985), 24 Ohio App. 3d 209, 494 N.E.2d 1158.

The role of the appellate court is to determine whether the trial court abused its discretion in its consideration of the evidence involving an administrative appeal. *In re Brantley* (1987), 34 Ohio App. 3d 320, 324, 518 N.E.2d 602. Abuse of discretion implies a decision that is without a reasonable basis and is clearly wrong. *See Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 463 N.E.2d 1280.

Reliable, probative and substantial evidence in an employment discrimination case brought pursuant to R.C. 4112 means evidence sufficient to support a finding of discrimination under Title VII.[1] *Plumbers*, 66 Ohio St. 2d at 196. To

establish employment discimination as prohibited by R.C. 4112.02(A), the Commission initially must prove by a preponderance of the evidence that there is a prima facie case of discrimination. The burden then shifts to the employer who must articulate some legitimate non-discriminatory reasons for the adverse action. The Commission then must demonstrate by a preponderance of the evidence that the reasons proffered by the employer are but a pretext. *Plumbers*, 66 Ohio St. 2d at 197; *In re Brantley* (1987), 34 Ohio App. 3d 320, 518 N.E.2d 602.

While no Ohio cases appear to have established what constitutes a prima facie case of sexual harassment for a sexually hostile work environment under R.C. 4112.02(A), we adopt the criteria articulated by the Sixth Circuit for sexual harassment under Title VII. To establish a prima facie case of a sexually hostile work environment under Title VII the Commission must establish that:

"(1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, ,or offensive working environment that affect seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superior liability." *Highlander* v. *K.F.C. Nat. Management Co.* (C.A. 6, 1986), 805 F.2d 644, 649; *Rabidue* v. *Osceala Refining Co.* (C.A. 6, 1986), 805 F.2d 611; *Henson* v. *City of Dundee* (C.A. 11, 1982), 682 F.2d 897.

There is no dispute that Ms. Hamm, a female, belongs to a protected group.

Scandinavian argues that the second element of Ms. Hamm's prima facie case was not met because Ms. Hamm herself engaged in sexually explicit language. The record reveals that Ms. Hamm was subjected to unwelcome sexual propositions by Darryl Jones and Mike Palumbo, a Scandinavian executive and part-owner. Ms. Hamm was also subjected to continuous, sexually offensive and degrading comments, gestures, and language by Darryl Jones and Steve Currier. This pervasive harassment created an offensive working environment which was verified by the testimony of other female employees. The record reveals that Ms. Hamm did not engage in, welcome or encourage the constant verbal sexual abuse leveled at her and other women by their male superiors. Further, Ms. Hamm's complaints to her superiors, Ms. Schultze and Mr. Currier, demonstrate that she found the harassment very offensive.

With respect to the third element, Scandinavian asserts that Ms. Hamm did not demonstrate that she would have been the object of the harassment but for her sex because both men and women were subject to the sexually explicit language used during sales meetings. The record, however, reveals that the harassment was sexually based. All of the sexually explicit language, gestures and demeaning remarks were targeted at the female employees by their male superiors. Merely because men happened to be present when obscenities were uttered at women does not mitigate the impact of sexual harassment. Thus, the third element was clearly met under plaintiff's prima facie case.

The fourth element was also met by reliable, probative and substantial evidence. The constant stream of obscenities, verbal abuse and degradation to which Ms. Hamm was subjected created an intimidating and offensive working environment. Ms. Hamm's opposition to such treatment resulted in her constructive discharge from Scandinavian and denial of the promised transfer to Cleveland. As a result, she was denied tangible job benefits. Examining the totality of the circumstances and the pervasive sexual harassment at Scandinavian, Ms. Hamm's psychological well being was seriously affected by the language and behavior to which she was subjected.

The Commission also met the fifth element of its *prima facie* case insofar as they established the existence of *respondeat superior* liability. A plaintiff must show that the employer knew or should have known of the harassment and failed to take remedial action. *Bundy*, 641 F.2d at 943; *Henson*, 682 F.2d at 904. The conduct of Mr. Jones, Mr. Currier and Mr. Palumbo demonstrated their participation in creating an offensive work environment. The Commission showed the pervasive nature of the harassment which, at the very least, gave constructive knowledge of sexual harassment to the management at Scandinavian.

Therefore, the Commission established a *prima facie* case of sexual harassment with reliable, probative and substantial evidence.

Scandinavian contends that it had legitimate, nondiscriminatory reasons why Ms. Hamm was not transferred to the pre-sale position in Cleveland. Scandinavian asserts that Ms. Hamm was a good sales "closer" but someone who was not interested in servicing clientele once the club opened. They also maintained that Ms. Hamm did not want to be supervised and was combative with superiors. Scandinavian argues that Mr. Currier's decision to deny her the Cleveland position allegedly stemmed from the belief that to send her to such a "plum" job would have a negative impact on the morale of other employees.

The Commission argues that Scandinavian's "reasons" for not receiving the transfer to Cleveland was mere pretext to sexual discrimination. We agree. An employer's explanation may be exposed as pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs* v. *Burdine* (1981), 450 U.S. 248, 256. The testimony of Ms. Hamm's co-workers reveals that she was well liked and respected by them as well as by her clients to whom she rendered excellent service. Ms. Hamm was never cited or "written up" for any alleged violations of work rules or misconduct and was never given an explanation why she was denied the Cleveland transfer. The evidence reveals that the denial of the transfer stemmed from Mr. Currier's and Mr. Jones' animus at her resulting from her opposition to their sexual harassment.

Therefore, the Commission proved by a preponderance of the evidence that the reasons forwarded by Scandinavian were a pretext for Ms. Hamm not receiving the transfer to Cleveland which had been promised to her.

We thus hold that there was reliable, probative and substantive evidence of sexual harassment by Scandinavian in violation of R.C. 4112.02(A) and that the trial court did not abuse its discretion.

Accordingly, appellant's second and third assignments of error are overruled.

### III.

Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN AFFIRMING A DECISION OF THE OHIO CIVIL RIGHTS COMMISSION WHERE THE EVIDENCE OF ALLEGED SEXUAL SOLICITATION WAS NOT REASONABLY RELATED TO THE UNDERLYING CHARGE AND WAS ALSO BARRED BY THE STATUTE OF LIMITATIONS.

Ms. Hamm filed a charge of discrimination in July of 1984 in which she alleged that she was "sexually harassed with abusive language" and "sexually demeaning terms." The Commission's complaint modified the claim by stating that Ms. Hamm was subject to "sexual harassment and abusive language."

At the hearing, the Commission introduced evidence that Darryl Jones propositioned her on November 19, 1983. Scandinavian asserts that the claim brought must have some reasonable relationship to the allegation in the charge and that the charge neither included the act in November of 1983 nor had any reasonable relationship to the claim of sexual harassment brought in the complaint. They also assert that the allegations of Mr. Jones' proposition to take Ms. Hamm home in November, 1983 were barred by the statute of limitations under R.C. 4112.05(B) which requires a party of file its charge within six months of the unlawful discriminatory practices.

All claims of discrimination are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. *Babrocky* v. *Jewell Food Co. & Retail Meatcutters* (C.A. 7 1985), 773 F.2d 857. The specific words of the charge of discrimination "need not presage with literary exactitude" the complaint that may follow. *Sanchez* v. *Standard Brands, Inc.* (C.A. 5, 1970), 431 F.2d 455. Scandinavian was well informed about Ms. Hamm's concerns about sexual harassment insofar as the charge specified that Ms. Hamm was "sexually harassed and fired due to sex, female . . . ." Therefore, we find that Mr. Jones' proposition to Ms. Hamm that they spend the night together was reasonably related to the underlying charge of sexual harassment and abusive language. Moreover, events taking place more than six months prior to filing of a charge may be admitted to shed light on the true nature of matters occurring within the sixth-month period. *Local Lodge No. 1424, International Association of Machinists, AFL-CIO, et al.* v. *National Labor Relations Board* (1960), 362 U.S. 411.

Thus, it was entirely proper for the examiner to admit into evidence Mr. Jones' proposition to Ms. Hamm, not for purposes of showing liability, but for purposes of showing a continuing course of sexual harassment.

*354*

Accordingly, appellant's fourth assignment of error is overruled.

### IV.

Appellant's last assignment of error states:

THE TRIAL COURT ERRED IN AFFIRMING A DECISION OF THE OHIO CIVIL RIGHTS COMMISSION THAT HOLDS APPELLANT LIABLE FOR PURE SPEECH IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 11 OF THE OHIO CONSTITUTION.

Scandinavian maintains that liability cannot attach absent a finding that the language giving rise to the sexual harassment is obscene; that is, appellant contends that the language and verbal sexual abuse to which Ms. Hamm was subjected is protected speech.

The United States Supreme Court has established that a sexually hostile work environment violates Title VII. *Meritor Savings Bank* v. *Vinson* (1986), 477 U.S. 57. Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *id.* at 67. The Court stated:

"Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a guantlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets." Id. (quoting *Henson* v. *Dundee* (1982), 682 F.2d 897, 902). Therefore, just as "racial epithets" may be actionable under Title VII, sexual abuse, be it verbal or otherwise, which creates a hostile or offensive work environment is likewise actionable and does not constitute protected speech under these circumstances.

Therefore, appellant's final assignment of error is overruled.

Accordingly, we affirm the judgment of the trial court.

It is ordered that appellees recover of appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

*Judgment affirmed.*

KRUPANSKY, P.J., and
J. F. CORRIGAN, J., Concur

---

[1] Title VII's key provision states:

"It shall be an unlawful employment practice for an employer -

"(1) to fail or refuse to hire or to discharge any individuals, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges or employment because of such individual's sex.

* * *" 42 U.S.C. 2000(e) - 2 (a)(1) (1976).