OPINION
Appellants Eugene and Anita Butts appeal a judgment of the Richland County Common Pleas Court dismissing their product liability and negligence claims against appellees Troy-Bilt Manufacturing Company, Garden Way, Inc., Garden Way Canada, Inc.:
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PRODUCT LIABILITY CLAIMS.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AS TO PLAINTIFFS' NEGLIGENCE CLAIMS, THAT PLAINTIFF HAD ASSUMED THE RISK OF HIS INJURY AND WAS NEGLIGENT.
 III. THE TRIAL COURT ERRED IN PERMITTING THE DEFENDANT, OVER PLAINTIFFS' OBJECTIONS, TO ELICIT TESTIMONY FROM ANOTHER ACCIDENT VICTIM AS TO THE VERDICT RENDERED UPON SAID VICTIM'S SIMILAR CLAIM AGAINST THE DEFENDANT IN THE STATE OF GEORGIA.
 IV. THE TRIAL COURT ERRED IN DIRECTING A VERDICT FOR DEFENDANTS UPON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES.
In 1990, appellant Eugene Butts bought a Super Tomahawk chipper-shredder manufactured by appellee Troy-Bilt. After he bought the machine, but before it was delivered to him, appellant read through the owner's manual provided by the manufacturer. The shredder is designed to finely chop small brush, shrubbery trimmings, and garden waste into small particles to be used for mulching or composting. The machine accomplishes this by means of flails or knives, which roll around at a very high speed inside a shredding chamber.
On August 19, 1992, appellant was using the shredder to shred green corn stalks. The manual suggested that green, wet material be allowed to dry before attempting to shred it. However, appellant did not allow the material to dry. The discharge tunnel became clogged with wet, partially-shredded corn stalks. Without turning off the machine, appellant removed the steel rod and hairpin retainer that kept a service door locked in place over the discharge chute of the shredder. He opened the service door, and reached to the edge of the chute to remove some of the pieces of corn stalk.
Appellant's hand went into the shredding chamber, and his fingers were torn off by the knives of the shredder.
Appellants filed the instant action, including product liability claims for defective product design, inadequate warning, inadequate post-marketing warnings, and failure to conform to representations. Appellants also claimed that appellees were negligent in the manufacturing of the chipper-shredder, and that he was entitled to punitive damages.
Appellees moved for summary judgment. The trial court found, as a matter of law, that appellant assumed the risk of his injury barring the product liability claims. The case proceeded to jury trial on issues of negligence, and proximate causation. At the conclusion of appellants' case-in-chief, the court granted a motion for directed verdict on the claim for punitive damages.
The jury was instructed that appellee had assumed the risk of his injury, and was negligent, as a matter of law. The jury was then asked to determine whether appellee was negligent, proximately causing injury to appellant, and if so, to proceed to a comparative negligence analysis. The jury found that appellee was not negligent. The complaint was dismissed in accordance with the jury's verdict.
 I. II.
Appellants argue that the court erred in the partial summary judgment, finding that he assumed the risk of his injury. He claims that his injury was not caused by a known risk, but rather by an unknown risk. He argues that the evidence demonstrates that his hand was pulled in to the chamber, and the warnings did not adequately protect him against the pull-in danger.
Appellant testified in his deposition that when the machine clogged, he opened the service door, put his right hand straight down to the edge of the discharge tunnel, and scraped the clogged material away. He testified that he did not stick his hand into the chute, but rather at the edge of the chute. When asked about the pull-in theory, appellant testified that his glove might have caught on the flails, pulling his hand toward the knives. Butts' Deposition, 11. After his deposition testimony, appellant filed an affidavit, this time claiming that he grabbed corn stalks, which were protruding out of the chute, and his hand was sucked into the chute by the long pieces of corn stalk.
A party cannot create a disputed fact by virtue of an affidavit filed after his deposition, contradicting his earlier testimony.
Further, it is apparent that appellant completely disregarded the specific warnings of appellees, regardless of whether his hand was at the edge of the chute or pulling a corn stalk protruding from the chute. He admits in his deposition that his hand was in the discharge area. The owner's manual described safe procedures for removing clogs from the chute. The manual provided that if the machine became jammed or clogged, the operator should shut the engine off and move the clutch lever up to prevent damage to the parts. To avoid injury, the operator should make sure all moving parts have come to a complete stop, and then disconnect the spark plug wire. The manual provided that only then should the operator inspect the shredder hopper, chute, and discharge screen, and the internal chamber. The manual emphasizes that rotating blades can take from 90 to 120 seconds or longer to stop after the machine is off. The manual further provided that only a wooden stick should be used to clear away jammed material. In a later paragraph, the manual again emphasizes that in order to remove material from the discharge area in the event of a clog, the operator should use a long-handled shovel or stick. The manual emphasized that the operator should never use his hands or feet. The manual specifically stated that the operator should never put hands or feet in the discharge opening.
A decal on the service door itself, which appellant had to open while the machine was running to unclog the machine, warned that to avoid serious injury while the machine is running, the operator must keep hands and feet out of the discharge opening, keep away from the discharge area, and keep the service door secured with a rod and hairpin. Another decal warned, "Keep hands, feet, face, and clothing out of the shredder hopper and chipper chute and away from the discharge area and moving parts at all times, to avoid serious injury." The decal warned that before doing maintenance or service, the operator should shut off the engine, let all moving parts stop completely, and disconnect the spark plug wire.
Appellant admitted in his deposition that his hand was in the discharge area, stating, "you got me on that area business." Butts' Deposition, 90. He readily admitted that he failed to follow the manual's operating procedure for removing a clog. He also admitted that he had read the manual when he purchased the machine.
Implied assumption of the risk occurs when the actor has full knowledge of a condition, the condition is patently dangerous to him, and he voluntarily exposes himself to the hazard created.Sech vs. Rogers (1983), 6 Ohio St.3d 462. Appellant admitted in his deposition that he had specific knowledge of a potential hazard if he put his hand in the discharge area. He testified that despite that knowledge, and the warnings, he proceeded to put his hand in the area, voluntarily. Butts' Deposition, Page 196-197. Appellant was seventy-three years old at the time of the injury, and had years of experience in operating machinery. He grew up working on a farm, around machinery, until he was nineteen years old, when he went to work in meat cutting. Sometime later, he went to work in a factory, operating assembly line machine. In addition, he had owned and operated woodworking machinery and lawn and gardening machinery, including an older chipper-shredder. On the facts of the instant case, reasonable minds could come to but one conclusion, and that conclusion is adverse to appellant. Civ.R. 56(C). The court did not err in granting summary judgment on the products liability claim, as assumption of the risk is a complete defense to recovery a product's strict liability claim. R.C. 2315.20(B)(2).
As to the claim for negligence, as outlined above, the court did not err in finding that appellant assumed the risk. Further, any error in the court's ruling on this issue was rendered moot by the jury's verdict in the negligence action. The jury was specifically asked by way of interrogatory whether appellee was negligent in a way that was a proximate cause of an injury to appellant. If the jury answered the question affirmatively, they were then to determine whether appellant's negligence, which the court had determined as a matter of law, was a proximate cause of his own injury. The verdict form continued to allow the jury to apportion negligence, and award damages in accordance with this apportionment. However, the jury found that appellee was not negligent. Therefore, the jury never considered the issue of appellant's comparative negligence, and appellant has not shown prejudice by the court's ruling.
The first and second Assignments of Error are overruled.
 III.
John Barger filed a lawsuit similar to the instant action in Georgia. Appellant called Barger as a rebuttal witness, in an attempt to prove appellee's knowledge of the chipper-shredder's dangerous propensities. The court permitted appellee to elicit testimony on cross-examination of Barger, over objection, that a defense verdict had been rendered in his case. The court held that this testimony was permissible for impeachment purposes, and overruled the objection.
Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness, or by extrinsic evidence. Evid.R. 616. When statements are offered solely to impeach a witness, and are of no substantive evidentiary value, the hearsay rule and its exceptions are not implicated. State vs. Jones (1996), 114 Ohio App.3d 306, 322.
This evidence clearly was admissible for impeachment purposes, to demonstrate Barger's motive and bias. Appellant concedes in his brief that this evidence was of some impeachment value; however, he argues that the court did not limit the jury's consideration of this evidence to its impeachment purpose. Appellant failed to request a limiting instruction and, therefore, has waived any error. Schade vs. Carnegie Body Company (1982),70 Ohio St.2d 207; Civ.R. 51(A).
The third Assignment of Error is overruled.
 IV.
Appellant argues that the court erred in directing a verdict on his claim for punitive damages. The jury rendered a verdict finding that appellee was not negligent. Therefore, appellant has not demonstrated prejudice in the court's granting of a directed verdict on the issue of punitive damages. Having found no negligence, the jury could not have concluded that appellees acted with actual malice and, therefore, punitive damages were not appropriate.
The fourth Assignment of Error is overruled.
The judgment of the Richland County Common Pleas Court is affirmed.
By: Reader, J., Farmer, P. J. and Gwin, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is affirmed. Costs to appellants.