This is an appeal from the judgment of the Washington County Court of Common Pleas, which, following a jury trial, entered judgment in favor of Defendants-Appellees Electronic Data Systems Corporation [hereinafterEDS], and Bobby Dean Briley. We affirm the judgment of the trial court.
Plaintiff-Appellant Tammy Cline filed suit against appellees alleging,inter alia, sexual harassment based on a hostile work environment, quid pro quo sexual harassment, and constructive discharge. Appellant is a former employee of EDS, and appellee Briley was her supervisor while she worked at EDS. Appellant alleges that, beginning in 1995, she suffered a systematic pattern of sexual harassment from her co-workers in general, and from Briley in particular. According to appellant, Briley frequently made suggestive comments and gestures toward her. Appellant claims that she suffered similar harassment from her co-workers. In addition, appellant claims that Briley told her she would not receive a promotion unless she performed sexual favors for him. Appellant claims that the harassment became so severe that she was ultimately forced to resign.
On July 17, 1998, after a two-week trial, the jury returned a verdict in favor of appellees. The trial court journalized the jury's verdict on August 14, 1998. Appellant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. On February 16, 1999, the trial court denied appellant's motions. On March 17, 1999, appellant filed a timely notice of appeal.
Appellant's notice of appeal contained a request for selected portions of the trial transcript and jury instructions. Pursuant to App.R. 9 (B), appellees filed a motion to designate the entire trial transcript as part of the record. On July 21, 1999, we denied appellees' motion because it was not timely filed.
Appellant presents nine assignments of error for our review.
 ASSIGNMENTS OF ERROR 1. WHETHER THE JURY INSTRUCTIONS AND INTERROGATORIES ON SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT, AFFIRMATIVE DEFENSE QUID PRO QUO AND TANGIBLE JOB DETRIMENT WERE IMPROPER, MISLEADING AND CAUSED PREJUDICIAL ERROR.
 2. WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE JURY TO ASSESS BRILEY'S CONDUCT WHILE ALLOWING TAMMY CLINE'S CONDUCT TO BE ADMITTED.
 3. WHETHER OR NOT THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO BYPASS INTERROGATORY [SIC] NOS. 2, 3, AND 4 IF THEY ANSWERED IN THE NEGATIVE TO INTERROGATORY NO. 1.
 4. WHETHER OR NOT THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF'S AFFAIR WITH A MARRIED CO-WORKER WAS ALLOWED TO BE BROUGHT INTO EVIDENCE.
 5. WHETHER OR NT [SIC] THE TRIAL COURT ERRED BY LIMITING TAMMY CLINE'S TANGIBLE JOB DETRIMENT IN JURY INTERROGATORY NO. 6 SOLELY TO THE LOSS OF THE DATA COM JOB.
 6. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING APPELLANT TO TESTIFY WHY SHE RESPONDED THE WAY SHE DID TO CERTAIN QUESTIONS DR. GALLAGHER ASKED HER ABOUT HER SEX LIFE.
 7. WHETHER OR NOT THE TRIAL COURT COMMITTED ERROR IN IT'S [SIC] INSTRUCTION ON CONSTRUCTIVE DISCHARGE.
 8. WHETHER OR NOT THE TRIAL COURT COMMITTED NOT ALLOWING TAMMY CLINE TO BRING UP THE RETALIATION CLAIM OF JOEL MIDDLETON.
 9. WHETHER OR NOT THE TRIAL COURT FAILED IN NOT ALLOWING TAMMY CLINE TO SHOW THAT AFTER APPELLANT'S COMPLAINT OF BRILEY'S SEXUAL HARASSMENT EDS NEVER CONDUCTED SEXUAL HARASSMENT TRAINING AT THE SITE AND THEREFORE NO AFFIRMATIVE DEFENSE COULD BE MADE BY APPELLEE.
Appellees argue that appellant has failed to submit a sufficient record upon which we may decide the instant case. The appellant has the duty to provide a reviewing court with a sufficient record to support the assigned errors. App.R. 9 (B). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385.
Appellant's assignments of error fall into two primary categories: challenges to the trial court's jury instructions, and challenges to certain evidentiary rulings. Appellant included in the record a portion of the trial court's charge to the jury, as well as selected excerpts from the trial testimony. Appellees argue that, as a matter of law, these portions of the record are insufficient to support the assigned errors.
The Supreme Court of Ohio has held that a jury instruction must be considered in its entirety. Sech v. Rogers (1983), 6 Ohio St.3d 462,453 N.E.2d 705. Other appellate courts have held that review of a trial court's jury instructions requires the entire charge to the jury as well as a complete trial transcript. See, e.g., Baker v. Cuyahoga Cty. Court ofCommon Pleas (1989), 61 Ohio App.3d 59, 572 N.E.2d 155. We agree with appellees that appellant's failure to include a complete transcript of the trial and jury instructions in the record on appeal is dispositive of the instant case. We find that we have an insufficient record on which to rule. Therefore, we are required to presume the regularity of the proceedings in the court below. Knapp. Accordingly, we affirm the judgment of the trial court.
Although appellant's failure to provide a complete transcript of the trial and jury instructions is fatal to her appeal, the incomplete record affects the individual assignments of error in different ways. Thus, for purposes of thoroughness and clarity, we shall, nonetheless, address each of appellant's assignments of error.
 II.
In her First Assignment of Error, appellant argues that the trial court's jury instructions and interrogatories on sexual harassment were misleading. Specifically, appellant argues that the instructions failed to sufficiently distinguish between hostile work environment and quid pro quo harassment, as well as between a hostile work environment created by a supervisor as opposed to that created by a co-worker. In addition, appellant argues that the trial court erred in instructing the jury that it could consider appellant's own conduct in deciding whether or not an environment of sexual harassment existed at EDS.
We first note that appellant failed to preserve her objection to the jury instructions. Appellant contends that she objected to the jury instructions at a two-hour conference which the trial court held the night before the case was submitted to the jury. Unfortunately, the bulk of this conference was not recorded, and the partial transcript which appellant included in the record on appeal contains only generalized objections to the jury instructions and interrogatories. Appellant argues that she should not be prejudiced by the failure of the court reporter to record this conference. As appellees argue, however, appellant has failed to utilize App.R. 9 (C) or (D) to reconstruct a record of this conference for our review on appeal. Appellant has waived any error on appeal by failing to preserve a specific objection to the trial court's jury instructions. See Civ.R. 51 (A).
Even assuming, arguendo, that appellant had properly preserved her objections to the jury instructions, her First Assignment of Error would fail nonetheless. Appellant argues that the trial court's jury instructions hopelessly confused hostile work environment and quid pro quo sexual harassment. Our review of the excerpts of the instructions included in the record by appellant, however, reveals no such confusion. The trial court gave separate instructions on hostile work environment and quid pro quo sexual harassment, and properly outlined the elements of both forms of harassment. Also, the jury interrogatories did not require the jury to find that a hostile work environment existed at EDS before it could find that appellant was subjected to quid pro quo harassment, as alleged by appellant.
We also disagree with appellant's contention that the trial court failed to distinguish between a hostile work environment created by a co-worker, and that created by a supervisor. As appellant argues, somewhat different standards apply to co-worker and supervisor sexual harassment, because an employer is charged with knowledge of harassment created by its supervisory personnel. See Faragher v. City of Boca Raton (1998), 524 U.S. 775,807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662, 689, holding the employer vicariously liable for harassment created by "supervisor with immediate (or successively higher) authority over the employee," subject to the affirmative defense of the employer.
Our review of the excerpts from the record submitted by appellant reveals that the trial court gave separate instructions to the jury on supervisor and co-worker sexual harassment. The court below explained that EDS was liable for sexual harassment by appellant's co-workers if it knew or had reason to know of such conduct, but that EDS was liable for harassment by Briley, appellant's supervisor, whether or not it was aware of such conduct. Thus, appellant's arguments are not even supported by the portions of the jury instructions that she has included in the record.
Appellant's argument that the trial court erred by instructing the jury to consider appellant's own conduct, when determining whether or not she had been subjected to a hostile work environment, must also fail. The United States Supreme Court has held that the trier of fact must consider the totality of the circumstances, including the plaintiffs own conduct, in determining whether or not alleged sexual harassment created a hostile work environment. Meritor Savings Bank v. Vinson (1986), 477 U.S. 57,106 S.Ct. 2399, 91 L.Ed.2d 49. Appellant argues that Fed.R.Evid. 412, the federal rape shield rule, effectively overruled Meritor when it was amended to bar evidence of a plaintiffs sexual activity in civil cases. See Fed.R.Evid. 412 (b). Appellant's argument is without merit. Ohio's rape shield law, R.C. 2907.02 (D) and 2907.05 (D), applies only in criminal cases. There is no counterpart to Fed.R.Evid. 412 (b) in the Ohio Rules of Evidence, rendering this rule inapposite in this case.
Finally, appellant argues that, even if her own conduct is relevant to rebut her claim that her co-workers harassed her, it is not relevant to her claim that Briley, her supervisor, harassed her. This argument is based on the difference in employment status between appellant and Briley. If appellant engaged in sexual banter with her co-workers, that is relevant to whether or not she found their conduct offensive because, presumably, she would feel free to object to those with whom she was on equal footing. Since Briley was a supervisor, however, appellant could reasonably anticipate retaliation if she objected to his behavior. As a result, appellant argues that the fact that she engaged in sexual banter and jokes with her co-workers, and even with Briley, is irrelevant to the issue of whether or not she found Briley's conduct offensive.
The Meritor Court recognized that there is a danger of unfair prejudice to an alleged victim of sexual harassment by admitting evidence of her own sexual conduct. The Court stated that a trial court "must carefully weigh the applicable considerations in deciding whether to admit evidence of this kind," although "there is no per se rule against its admissibility." Mentor at 69, 106 S.Ct. at 2406-2407, 91 L.Ed.2d at 61. Thus, in an appropriate case, appellant's argument that her own conduct is irrelevant to a determination of whether or not her supervisor harassed her could possibly have merit. The relevance of evidence in a particular case, however, is committed to the sound discretion of the trial court. Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Without a complete trial transcript we are unable to determine whether or not the trial court abused its discretion in the instant case. Under Knapp, supra, we presume the validity of the proceedings in the court below and, therefore, affirm on this issue.
For the reasons stated above, appellant's First Assignment of Error is OVERRULED.
 III.
In her Second Assignment of Error, appellant argues that the trial court erred in not allowing the jury to consider evidence of Briley's conduct that occurred off the immediate employment premises, but that did occur in the course of Briley's employment. Appellant called Joel Middleton as a witness and intended to ask him about two incidents that occurred while Briley, Middleton, and others were on a business trip to Columbus. On one such trip, Briley allegedly told his co-orkers about viewing child and animal pornography on the Internet. On another occasion, Briley talked about leering at a woman who did not appear to be wearing a bra. Appellant argues that this testimony is relevant to proving that, under the totality of the circumstances, a discriminatory environment existed at EDS.
As noted in the First Assignment of Error, the trial court has broad discretion over evidentiary issues, "so long as such discretion is exercised in line with the rules of procedure and evidence." Rigby at 271, 569 N.E.2d at 1058. The trial court's decisions regarding the relevance of certain evidence will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion is more than an error of law. Rather, it requires that the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
We are once again unable to determine if the trial court abused its discretion, by excluding the testimony in question, without reviewing the complete trial transcript, all of which is not in the record before us. Accordingly, appellant's Second Assignment of Error is OVERRULED.
 IV.
In her Third Assignment of Error, appellant argues that the trial erred in instructing the jury to skip jury Interrogatories Nos. 2 through 4, if they found against appellant on Interrogatory No. 1. Interrogatory No. 1 asked the jury to determine whether a sexually hostile work environment existed at EDS, and whether that environment would offend a reasonable person. Interrogatory No. 2 asked whether appellant was personally offended. Interrogatory No. 3 then asked whether Briley subjected appellant to a sexually hostile work environment. Finally, Interrogatory No. 4 asked the jury to determine if EDS had proven its affirmative defense.
The trial court instructed the jury that if they found for appellees on Interrogatory No. 1, then they should proceed directly to Interrogatory No. 5, which addressed appellant's claim for quid pro quo sexual harassment. Appellant argues that this was an error because it required her to prove of a generally hostile work environment at EDS before the jury would consider whether Briley specifically had harassed her.
The record before us does not contain a specific objection to the jury interrogatories. The partial transcript of the trial court's conference on the jury instructions contains appellant's objection that counsel did "not like these jury interrogatories." Such a generalized objection, however, is insufficient to preserve the issue for appeal. See Penna v.Northeast Ohio Emergency Affiliates (1995), 108 Ohio App.3d 96,670 N.E.2d 268. Appellant has failed to utilize App.R. 9(C) or (D) to reconstruct the complete record of the trial court's conference on the jury instructions. We find that appellant has waived any error by failing to provide any record of a specific objection to the trial court's jury interrogatories on hostile work environment. See Civ, R. 51(A).
Accordingly, appellant's Third Assignment of Error is OVERRULED.
 V.
In her Fourth Assignment of Error, appellant argues that the trial court erred in admitting testimony that she had an affair with a married co-worker, Joel Middleton. Appellant argues that the proper focus at trial was on whether or not a hostile work environment existed at EDS. She concedes that her interactions with her alleged harassers were relevant to her claims. However, she argues that her personal life outside of the work place is irrelevant.
The record contains the trial court's decision on a motion in limine
in which court ruled that appellees would be allowed to introduce evidence concerning appellant's relationship with Middleton. However, the portions of the trial transcript submitted by appellant do no contain the disputed testimony, any objection by appellant, or any argument on this issue. Even if we assume that appellees presented evidence of appellant's affair with Middleton, we do not know the context in which it was offered, the purpose for which it was offered, or whether appellant renewed her objection to this testimony at trial. Given the incomplete record before us, we cannot find that the trial court abused its discretion in allowing evidence of an affair between appellant and Middleton to be admitted.
Appellant's Fourth Assignment of Error is OVERRULED.
 VI.
In her Fifth Assignment of Error, appellant argues that the trial court erred in limiting its instructions to the jury on tangible job detriment to appellant's alleged loss of a particular position at EDS. Appellant argues that the term "tangible job detriment" is broader than merely losing a particular position, and should include discharge, demotion, undesirable reassignment, disciplinary action, and threats of termination.
This assignment of error demonstrates why a complete trial transcript is generally necessary for a proper analysis of the trial court's jury instructions. In general, appellant is correct in arguing that the term "tangible job detriment" is broader than merely the loss of a particular position. See, e.g., Faragher, supra, 524 U.S. at 808, 118 S.Ct. at 2293,141 L.Ed.2d at 689 (listing discharge, demotion, and undesirable reassignment as examples of tangible job detriments). However, appellant was not entitled to a broader instruction if the evidence did not support a conclusion that appellant suffered other tangible job detriments as a result of the alleged harassment. In the absence of such evidence, we must conclude that the trial court properly instructed the jury on the issue of tangible job detriment.
Appellant's Fifth Assignment of Error is OVERRULED.
 VII.
In her Sixth Assignment of Error, appellant argues that the trial court erred in limiting her testimony concerning her examination by appellees' expert witness. Appellees' expert witness, Dr. Gallagher, performed an independent psychological examination of appellant. During that examination, Dr. Gallagher asked appellant several questions about her sexual activity, which appellant answered in the negative. Dr. Gallagher apparently testified at trial that appellant had lied during the examination.
Prior to appellant's examination with Dr. Gallagher, the trial court issued a discovery order limiting the extent to which appellees could inquire into appellant's personal life. The trial court ruled that appellees could ask non-expert witnesses about any sexual language or conduct involving appellant that occurred in the workplace, but not outside of the workplace. The court also allowed appellees to elicit expert testimony as to whether appellant's personal relationships outside the workplace contributed to her alleged emotional problems.
Appellant sought to introduce the trial court's discovery order to justify her answers to Dr. Gallagher's questions about her personal life, arguing that, as she understood the order, she was not required to answer questions about sexual activity outside the workplace. Appellees objected, arguing that admitting the trial court's order would imply that Dr. Gallagher had acted improperly.
The trial court permitted appellant to respond yes or no to questions regarding whether she had received a copy of the trial court's order, and whether, based on her interpretation of that order, she had truthfully answered Dr. Gallagher's questions. Appellant argues that she was prejudiced by the trial court's decision to limit her testimony in this manner. She contends that her interpretation of the trial court's order provided a reasonable explanation for why she answered Dr. Gallagher's questions as she did. Appellant claims that Dr. Gallagher made her sound like a liar and that the trial court should not have limited her attempt to rehabilitate herself.
The trial court recognized that appellant could reasonably have misinterpreted the discovery order, as well as the potential for prejudice to appellees by admitting the order into evidence. These issues, the relevance of the discovery order to appellant's credibility and the potential for prejudice to appellees from admission of the discovery order, are matters within the sound discretion of the trial court. Rigby, supra. The trial court was clearly striving to be fair to all parties by permitting appellant to testify about her understanding of the discovery order, while limiting her responses to such questions. Given the abbreviated state of the record, especially the lack of Dr. Gallagher's testimony, we cannot say that the trial court abused its discretion.
Appellant's Sixth Assignment of Error is OVERRULED.
 VIII.
In her Seventh Assignment of Error, appellant argues that the trial court erred in its instruction to the jury on constructive discharge. The trial court instructed the jury that appellant was required to prove three elements to sustain her claim of constructive discharge: (1) that she resigned because of intolerable working conditions which no reasonable employee could be expected to endure; (2) that EDS knew or reasonably should have known about the intolerable conditions as well as their effect on appellant; and (3) that EDS intended for appellant to resign. Appellant argues that the third element is incorrect because the proper standard is that it be reasonably foreseeable that an employee will resign. Appellees argue that the trial court's instruction mirrors the elements for a prima facie case of constructive discharge established by our sister districts.
Constructive discharge exists when an employee's working conditions are so intolerable that a reasonable person in the employee's position would feel compelled to resign. Scandinavian Health Spa v. Civil Rights Comm. (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169. Courts apply an objective standard to determine "whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, 588-589, 664 N.E.2d 1272,1280-1281. This analysis requires courts to consider "a myriad of factors" in determining whether "the cumulative effect of the employer's actions" would force a reasonable employee to resign. Id. at 589,664 N.E.2d at 1281.
Many courts have observed that the constructive discharge analysis requires an "inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee." See,e.g., Scandinavian at 487, 581 N.E.2d at 1173. However, none of these courts have held that a plaintiff claiming constructive discharge must prove that the employer subjectively intended for him or her to resign. Indeed, the quoted language was originally taken from Held v. Gulf OilCo. (C.A.6, 1982), 684 F.2d 427, 432, in which the court rejected the argument that the employer's subjective intent is an element of constructive discharge. Rather, the Held court endorsed the rule that "a man is held to intend the foreseeable consequences of his conduct." Id. quoting Jacobs v. Martin Sweets Co., Inc. (C.A.6, 1977), 550 F.2d 364. Thus, while the trier of fact in a constructive discharge case must "inquire into the intent of the employer," such inquiry is objective, focusing on the reasonably foreseeable impact of the employee's working environment.
We find that it was error for the trial court to instruct the jury that they had to find that EDS intended for appellant to resign in order to find for appellant on her constructive discharge claim. However, given the abbreviated state of the record, we find that the trial court's error was harmless. It is well settled that "reversible error does not consist of misstatement or ambiguity in a part of the jury instruction." Sech v.Rogers, 6 Ohio St.3d at 464, 453 N.E.2d at 707. Appellant has only included selected excerpts from the jury instructions, so we are unable to determine whether or not the trial court cured its error regarding the elements of constructive discharge. Without a complete transcript of the jury instructions, we presume the regularity of the proceedings in the court below.
Appellant's Seventh Assignment of Error is OVERRULED.
 IX.
In her Eighth Assignment of Error, appellant argues that the trial court erred in not allowing her to submit evidence of retaliation against Joel Middleton. Appellant claims that EDS retaliated against Middleton for substantiating her allegations of sexual harassment. Specifically, appellant contends that EDS reassigned Middleton to the midnight shift, an undesirable assignment, and threatened to fire him.
In support of this assignment of error, appellant has included in the record a copy of the trial court's decision on the parties' motions inlimine, in which the court ruled that it would exclude evidence of retaliation against Middleton. However, the court specifically stated it would reconsider its ruling at trial and that appellant would have the right to proffer testimony concerning the alleged retaliation into the record. We have no record of any such proffer.
The trial court's decision on a motion in limine is, by its very nature, a preliminary ruling. State v. Grubb (1986), 28 Ohio St.3d 199,503 N.E.2d 142. A party who objects to the trial court's decision to exclude evidence on a motion in limine must proffer that evidence into the record at trial so that the court may make a final ruling on the matter. Failure to proffer the evidence at trial waives any error on appeal. Id.
In the instant case, the trial court specifically stated in its decision on the motions in limine that it would reconsider its ruling at trial. Nevertheless, the record before us contains no indication that appellant proffered evidence at trial that EDS retaliated against Middleton. We find that appellant has waived any error in this regard.
Appellant's Eighth Assignment of Error is OVERRULED.
 X
In her Ninth Assignment of Error, appellant argues that the trial court erred in limiting testimony about sexual harassment training at EDS. Appellant sought to elicit testimony that EDS never conducted sexual harassment training in response to her allegations. The trial court permitted appellant to present testimony that EDS did not conduct sexual harassment training while appellant was still employed. Appellant argues that the fact that appellant never conducted sexual harassment training, even after she resigned, is relevant to refute EDS's affirmative defense.
Having ruled against appellant on her previous assignments of error, appellant is left without a valid cause of action. The issue of EDS's affirmative defense is, therefore, moot. Accordingly, we decline to address the Ninth Assignment of Error pursuant to App.R. 12 (A)(1)(c).
The judgment of the Washington County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Grey, J.*: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment Only.
 ______________________ David T. Evans, Judge
* Lawrence Grey, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.