**UNITED PARCEL SERVICE, INC., Appellee,**

**v.**

**OHIO CIVIL RIGHTS COMMISSION et al., Appellants.**

[Cite as *United Parcel Serv., Inc. v. Ohio Civil Rights Comm.* (1991), 71 Ohio App.3d 146.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–900319, C–900333.

Decided May 29, 1991.

*Taft, Stettinius & Hollister, J. Alan Lips* and *Michael C. Lueder,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Joseph D. Rubino,* for appellant Ohio Civil Rights Commission.

*Robert I. Doggett,* for appellant Morin.

---

*Per Curiam.*

This cause came on to be heard upon the appeals, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, and the briefs and arguments of counsel for appellee and counsel for respondent-appellant, Ohio Civil Rights Commission.[1]

Respondents-appellants, Lou Ann Morin and the Ohio Civil Rights Commission ("commission"), appeal from the trial court's reversal of the commission's ruling that petitioner-appellee, United Parcel Service, Incorporated ("UPS") discriminated against Morin because of her sex in violation of R.C. 4112.02(A).

Morin began her employment with UPS in 1980 as a "Package Car Driver." In 1980 she became an "Area Personnel Representative" for the company's South Ohio District. Morin was responsible for handling personnel matters

---

1. See fn. 3, *infra.*

for UPS branches located in several Ohio cities and frequently made overnight trips to the branches. Her duties included recruiting, hiring, and orienting branch employees. Morin and the other Area Personnel Representatives typically worked ten to twelve hours daily. During the "peak" season (the three months preceding Christmas), Area Personnel Representatives worked twelve to sixteen hours per day.

Morin essentially contended that UPS's discrimination toward her began subtly in 1981 when she returned to work after the birth of her first child and was treated "coldly" by a superior and not given merit/performance stock several times. She alleged that in the fall of 1984, when she announced that she was expecting her second child, her UPS supervisors began harassing her, expressing doubts about her ability to do her job with two small children.

Morin experienced pregnancy-related health complications in October and November 1984, was briefly hospitalized for each complication, and missed two weeks of work following each hospitalization. Morin began a maternity leave in February 1985 and the baby was born in late March. Morin returned to work May 23, 1985, and resigned the following day. She applied for unemployment compensation, and after several denials and appeals, she was awarded benefits.

In November 1985, Morin filed a "charge of discrimination" affidavit with the commission alleging that she was harassed and intimidated by UPS management throughout and because of her second pregnancy, and that as a result, she was forced to terminate her employment.

After conducting a preliminary investigation, the commission found cause to believe that UPS had engaged in unlawful discrimination. The commission filed a complaint which alleged that UPS harassed and intimidated Morin and constructively discharged [2] her for reasons not applied equally to all persons without regard to their sex. Pursuant to a two-day hearing on the matter, and upon a hearing examiner's recommendation, the commission determined that UPS had discriminated against Morin. UPS petitioned the Hamilton County Common Pleas Court, pursuant to R.C. 4112.06, to review the decision. The court below held that there was no evidentiary basis to support the commission's decision. Both Morin (case No. C–900333) and the

---

**2.** A constructive discharge exists when an employee's working conditions are so difficult or unpleasant that a reasonable person would feel compelled to resign. See *Riddle v. Newton Falls Exempted Bd. of Edn.* (Oct. 7, 1988), Trumbell App. No. 4004, unreported, 1988 WL 105556.

commission (case No. C–900319) filed appeals, which have been consolidated.[3]

The following three assignments of error have been advanced:

"The common pleas court erred by reweighing the evidence and substituting its judgment for that of the Ohio Civil Rights Commission;

"The common pleas court erred by applying the incorrect case law to the facts as found by the Commission;

"The common pleas court erred in finding that (Morin) was not constructively discharged and that (UPS's) treatment of (Morin) was motivated by concerns about her work performance and not related to her sex."

These assignments essentially dissolve into the contention that the trial court abused its discretion by improperly reweighing the evidence and substituting its judgment for that of the commission and by concluding that Morin was not constructively discharged by UPS. This contention is meritless, and the assignments are overruled.

■ R.C. 4112.02(A) provides in pertinent part that:

"It shall be an unlawful discriminatory practice: (A) For an employer because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment * * *."

In order to support a finding of discrimination under R.C. 4112.02(A), the findings and orders of the commission must be supported by reliable, probative, and substantial evidence. *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, paragraph two of the syllabus; *South Wind Motel v. Ohio Civil Rights Comm.* (1985), 24 Ohio App.3d 209, 24 OBR 386, 494 N.E.2d 1158.

■ The role of an appellate court is to determine whether the trial court abused its discretion in its consideration of the evidence involved in an administrative appeal. *In re Brantley* (1987), 34 Ohio App.3d 320, 518 N.E.2d 602; *Scandinavian Health Spa, Inc. v. Ohio Civil Rights Comm.* (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169. To conclude that a trial court abused its discretion, the decision it rendered must be without a reasonable basis and clearly wrong. See *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

---

**3.** The commission's counsel filed an appellate brief and presented oral argument before this court. Morin's counsel was present during oral arguments; however, he neither presented argument nor submitted a brief setting forth assignments of error for our review.

■ Testimony in the instant case established that UPS demands high performance of all its employees, both male and female, and places family considerations secondary to job responsibilities and performance. The company's policy treats maternity leaves as disability leaves, whereby the "disabled" individual continues to receive a salary and insurance benefits, and the company sets no time limits upon the length of the leave of absence. In all cases, employees are expected to perform their complete job until such time as a disability leave is taken.

Morin conceded that her job performance suffered during her second pregnancy and that she did not apprise her supervisors of her doctor's recommendation to begin her maternity leave two months early due to the pregnancy-related health complications she experienced. Morin's family responsibilities began to interfere with her work performance, as she readily admitted, and she expressed a lack of knowledge as to how she was going to handle her conflict. When Morin's supervisors became aware of her deficient performance, she was warned to improve and was asked to develop a plan for handling the conflict so as to satisfactorily perform her job. When Morin's male supervisor Jack Devine experienced serious health and family problems which interfered with his work performance and responsibilities, he was demoted.

The record does not establish that Morin was held to a higher standard of performance or commitment than that of other employees, male or female. On the state of this record, we cannot say that the trial court abused its discretion by finding that the evidence did not support the commission's conclusion that UPS discriminated against Morin because of her sex.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., SHANNON and HILDEBRANDT, JJ., concur.