NEAL, Appellant,

v.

HAMILTON COUNTY et al., Appellees.

[Cite as *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920140.

Decided May 12, 1993.

*Robert A. Perez,* for appellant.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christopher J. Snyder,* Assistant Prosecuting Attorney, for appellees Hamilton County, Hamilton County Department of Human Services, John S. Dowlin, Sandra S. Beckwith, Steven J. Chabot, and Barbara J. Turner.

*Per Curiam.*

Plaintiff-appellant, Carolyn A. Neal, appeals from the directed verdict entered by the trial court in favor of defendants-appellees on her claims for constructive discharge and handicap discrimination by her employer and her employer's agent and representatives. In her seven assignments of error, five of which involve the trial court's entry of directed verdict, Neal contends: (1) the trial court erred in directing a verdict because the trial court, contrary to law, considered weight and credibility and construed inferences; (2) a directed verdict on her handicap-

discrimination-based claims was erroneous because she proved retaliation culminating in constructive discharge for filing an Ohio Civil Rights Commission charge; (3) the trial court was precluded from granting a directed verdict on her handicap-discrimination-based claims because she proved discrimination based upon defendants' failure to make reasonable accommodations, thereby shifting the burden to the defendants; (4) the directed verdict was erroneous because reasonable minds could have concluded that the defendants' agent intentionally inflicted emotional distress upon her; (5) the directed verdict created an appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct because it was granted by a judge employed by one of the defendants; (6) the trial court erred by *sua sponte* excluding an ex-employee's testimony; and (7) the trial court made its decision on her claim of retaliation for filing a workers' compensation claim, which had been bifurcated from her claims tried to the jury, prior to hearing the evidence. We find none of Neal's assignments of error to be well taken.

Neal was a twenty-six-year employee of Hamilton County. Prior to and during the one-and-one-half-year period upon which her claims are based, she wore a prosthesis on her lower left leg, had severe osteoarthritis of the back and left leg, and was hypertensive. From 1973 until her resignation in 1989, she was employed by the Hamilton County Department of Human Services ("HCDHS") in its payroll office. In 1983 Barbara Turner became her supervisor.

In June 1987 Turner requested a temporary handicapped parking permit for Neal to facilitate her transportation to work while Neal's daughter, who usually provided her with transportation, went on maternity leave. When requested to return the temporary parking permit after her daughter returned from maternity leave because Neal failed to meet the criteria of needing to use a wheelchair or crutches, Neal refused to do so. Subsequently Neal went on medical leave. Upon her return, she took the parking permit without permission and began using it again. When Neal met with Lynn Preuth, Human Resources Director, on March 8, 1988, to discuss the parking permit she became so upset that she fell. On March 11, 1988, Neal filed both an Ohio Civil Rights Commission charge alleging handicap discrimination regarding the permit and a workers' compensation claim for injuries from her fall. The charge was settled when Neal presented a physician's letter stating she was physically incapable of using crutches.

On April 6, 1989, after discovering she would need surgery for carpal tunnel syndrome, Neal informed Turner that she would need at least four weeks' recuperation time. Neal testified Turner "hounded" her to call the doctor to get the date of surgery. Neal called the doctor twice. She was told the doctor would contact her and that there was no need to keep calling.

On May 10, 1989, Neal received a memorandum from Preuth requesting her to schedule the surgery after June 2, since it was not an emergency and the only other payroll office employee, Peggy Greeson, had scheduled vacation over the Memorial Day holiday. Neal was asked to notify Preuth and Turner as soon as she had a surgery date. Neal testified that when she received the memorandum she went to Preuth to tell him the surgery was an emergency and Preuth told her she needed a doctor's letter stating it was an emergency or she would not get an approved leave. This requirement of a letter was not stated in the May 10 memorandum. Preuth testified he requested the doctor's letter May 17.

Neal was informed Friday, May 12, at 4:10 p.m. that her surgery was scheduled for May 18. She requested a letter from her physician, but was unable to get a copy of it until May 17. She did not inform Turner or Preuth of the date of surgery until May 17 because she did not have the doctor's letter stating the surgery was an emergency. Upon obtaining the letter she put it on Turner's desk.

Neal received an approved leave. Preuth testified that he believed he had been lenient in accepting both the late notice and the doctor's description of the surgery being "urgent" as an emergency. Turner's concern with the timeliness of notice resulted from HCDHS's need to distribute job duties so payroll could get out.

Neal had the surgery and testified that when she returned to work June 26, 1989, Turner blocked her access to the payroll office and directed her to Preuth's office. Turner and Preuth's designee, Dorothy Topper, met with Neal and presented her with a written reprimand for her late notice of surgery and refusal to call the doctor concerning the surgery date. Neal testified that she was also relieved of her duties and relocated in an area outside the payroll office. There was, however, no change in her salary or her position level.

Preuth testified it was his decision to issue the written reprimand and to reassign duties between Greeson and Neal. He stated their duties were interchangeable because they were cross-trained. He determined Greeson was more reliable and told Turner to give Greeson more high-priority duties such as data entry.

Preuth also testified that, while he believed Neal's failure to provide notice of her surgery date before May 17 was deceitful, dishonest, and insubordinate because she knew they needed the information to staff payroll, the reprimand read "neglect of duty and failure of good behavior" due to Turner's intervention. Turner testified she told Neal that the change in duties occurred because Turner needed someone in that position who was dependable, would cooperate, and would do whatever was needed to get the job done, and that Neal had demonstrated she was unwilling to do this.

On June 26, 1989, Turner sent Neal a memorandum asking how they could best accommodate her physical limitations and reminding her a work station had been ordered. On June 28, 1989, Turner sent Neal a memo requesting that Neal contact her directly about equipment needs and informing her that someone had been contacted to alleviate some problems in Neal's work area. On June 28, 1989, Neal sent Turner a memorandum telling her she almost fell and that she did not know her job description. She testified she received a job description on July 31, 1989.

Neal filed a grievance regarding the reassignment of duties and the written reprimand. The reassignment and reprimand were upheld through three of the four steps in a grievance process. Neal failed to complete the fourth step of the grievance procedure.

On August 10, 1989, Neal received a Predisciplinary Conference notice for refusing to file material and becoming loud and belligerent. Upon receipt of the notice, Neal became upset, fell off her chair, and was taken to the hospital by ambulance because of her hypertension.

While on medical leave due to this incident, Neal, at her daughter's insistence, put in for retirement and sent a memo to Preuth's supervisor regarding her intention to retire. Neal's physician testified he had advised her to quit work or change jobs whenever she complained of stress. The only comment from Neal's employer concerning retirement came from Topper, who, upon notice from the Public Employees Retirement System, asked Neal if she wanted to retire.

## I

We first address Neal's five assignments of error regarding the trial court's granting of defendants' motion for directed verdict. A directed verdict should only be granted where the trial court, without weighing the evidence or the credibility of the witnesses and after construing the evidence most strongly in favor of the nonmoving party, determines reasonable minds could come to but one conclusion on the evidence submitted and that conclusion is adverse to such party. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. This "reasonable minds" test requires the court "only to determine whether there exists any evidence of substantial probative value" in support of the nonmoving party's claim. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 69, 23 O.O.3d 115, 117, 430 N.E.2d 935, 938.

In her first assignment of error, Neal argues that the trial court considered the weight of the evidence and the credibility of witnesses and construed inferences in its decision to grant defendants' motion for directed verdict. After reviewing the record we conclude the trial court made a thorough analysis of the evidence

and correctly followed the requirements of Civ.R. 50(A)(4) in making its determination that there was no evidence of substantial probative value to support Neal's claims. Neal's first assignment of error is overruled.

Neal contends in her second assignment of error that the trial court erred in granting a directed verdict on her claims based on handicap discrimination because she proved discrimination based on retaliation by her employer for the filing of the Ohio Civil Rights Commission charge and that such retaliation resulted in a constructive discharge. Before a claim of constructive discharge can be submitted to the jury, the plaintiff must prove that her working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. *United Parcel Serv., Inc. v. Ohio Civ. Rights Comm.* (1991), 71 Ohio App.3d 146, 148, 593 N.E.2d 87, 88, fn. 2. Such a determination requires a case-by-case analysis and "an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee." *Scandinavian Health Spa, Inc. v. Ohio Civ. Rights Comm.* (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169.

We hold that Neal failed to provide any evidence of substantial probative value to show that her working conditions were so difficult or unpleasant that a reasonable person in Neal's situation would have felt compelled to resign or that the defendants intended the working conditions imposed would compel a reasonable person in Neal's situation to resign. The evidence demonstrated that Neal and her immediate supervisor had a strained relationship; that Neal received a written reprimand for failing to inform her supervisors of her surgery date as soon as possible; that the request for such notification was reasonable; and that upon her return from surgery Neal and another co-worker were assigned to exchange jobs. There was no demotion of Neal or any salary reduction by HCDHS. Furthermore, it was Neal's daughter who insisted she retire and her physician that recommended she retire or transfer to another department based on her hypertension and perceived job-related stress. Construed most strongly in Neal's favor, this evidence does not support Neal's allegation of constructive discharge.

## II

We turn now to Neal's discrimination claims. In Ohio, " ' * * * federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.' " *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609–610, 575 N.E.2d 1164, 1167, certiorari denied (1992), 503 U.S. ——, 112 S.Ct. 1263, 117 L.Ed.2d 491, quoting *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d

192, 196, 20 O.O.3d 200, 202–203, 421 N.E.2d 128, 131. The Ohio Supreme Court has adopted the evidentiary formula used by the United States Supreme Court as set forth below to analyze disparate-treatment discrimination cases under R.C. Chapter 4112.

To prevail on a claim for discrimination the employee must establish by a preponderance of the evidence a *prima facie* case of discrimination. The burden of production then shifts to the employer to provide some legitimate, nondiscriminatory reason for its conduct. The burden then shifts back to the employee to show by a preponderance of evidence the employer's reasons were a pretext for discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807. If the plaintiff establishes a *prima facie* case, she has produced sufficient evidence to avoid a directed verdict. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 505, 575 N.E.2d 439, 442, quoting *Rose v. Natl. Cash Register Corp.* (C.A.6, 1983), 703 F.2d 225, 227.

To present a *prima facie* case of employment discrimination, the employee must establish: (1) she is within a protected "suspect" class, *e.g.*, handicapped; (2) she was qualified for the job that she was performing and satisfied the normal requirements of the work; (3) she was in fact discharged; (4) she was discharged although other nonhandicapped employees were retained or not disciplined for similar conduct that resulted in the charging party's discharge. See, *e.g.*, *In re Brantley* (1987), 34 Ohio App.3d 320, 518 N.E.2d 602; *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1980), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128; *Ohio Civ. Rights Comm. v. Cincinnati Bd. of Edn.* (1985), Hamilton App. No. C–840149, unreported,[1] 1985 WL 11519.

■ In this case the trial court determined "there is not one iota of evidence" that any action taken by defendants was done because of Neal's handicap. Having examined the record, we agree that Neal's evidence failed to establish a *prima facie* case of handicap discrimination because, as explained previously, she did not prove that she was discharged. Furthermore, no evidence was offered to suggest that other nonhandicapped employees were retained or not disciplined for conduct similar to Neal's. In other words, there is no evidence of substantial probative value to support Neal's handicap-discrimination claim.

■ We hold that there is likewise no evidence to support Neal's retaliatory-discharge claim. To establish a *prima facie* case of retaliatory discharge a plaintiff must show, in addition to the elements required to establish a *prima*

---

1. In *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, an age-discrimination case under R.C. 4101.17, the Ohio Supreme Court modified the standard so that "absent direct evidence" the above elements must be demonstrated to establish a *prima facie* case.

*facie* discrimination case, that: (1) she engaged in a protected activity; (2) the employer knew of her participation in the protected activity; and (3) the alleged retaliatory action followed the plaintiff's participation in the protected activity sufficiently close in time to warrant an inference of retaliatory motivation. If this burden is met the employer must then articulate a legitimate, nondiscriminatory reason for its action and the plaintiff must then show the reason to be pretextual. The plaintiff cannot prevail if it appears from the evidence that the employer would have made the same decision regardless of plaintiff's participation in the protected activity. *Ohio Civ. Rights Comm. v. Cincinnati Bd. of Edn.* (Oct. 30, 1985), Hamilton App. No. C–840149, unreported, 1985 WL 11519.

█ Neal failed to meet the burden of establishing a *prima facie* case of retaliatory discharge in that there was no evidence of any retaliatory action against her for filing an Ohio Civil Rights Commission charge. Neal argues that following her civil rights charge Turner evaluated her unfairly. According to the evidence, her 1987 evaluation, completed in April 1988, and her 1988 evaluation were comparable to previous evaluations. There is no evidence that Neal was demoted. Both Neal and her co-employee were account clerks with interchangeable jobs. The duties Neal performed, after the reassignment, were always part of her job description. Neal's desk was moved from the payroll office because there was not enough room and the duties to be performed by the co-employee required confidentiality and an uninterrupted environment. There was no salary reduction. Moreover, the evidence, viewed most strongly in favor of Neal, establishes that the defendants' determination to shift job responsibilities in the payroll office was based on a legitimate business concern prompted by the need for a dependable, cooperative, reliable employee in Neal's original position. In other words, the evidence supports a finding that the defendants would have made the same decision if Neal had not filed the Ohio Civil Rights Commission charge. Because of her failure to provide evidence of any substantial probative value to support her discharge and discrimination claims, we overrule Neal's second assignment of error.

## III

█ Neal's third assignment of error contends that a directed verdict was erroneous because Neal proved discrimination based on failure to make reasonable accommodations for Neal. The evidence demonstrates that the defendants were willing to accommodate her physical limitations so that Neal could continue her employment. Neal's supervisor requested a work station and the Department of Human Services included money in its budget and ordered an L-shaped work station for Neal. Turner sent memoranda to Neal as to how best to accommodate Neal's physical limitations and arranged work so that Neal's

physical exertions would be minimal. There was no evidence presented that the defendants refused to make reasonable accommodations for Neal. In fact the evidence adduced demonstrates that Neal refused to participate in attempts to accommodate her in her new location. Therefore, we overrule Neal's third assignment of error.

## IV

Neal contends in her fourth assignment of error that it was error to direct a verdict on her claim for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress the plaintiff must prove:

"(1) That the defendant either intended to cause the plaintiff emotional distress or that he knew or should have known that his actions would cause the plaintiff emotional distress;

"(2) That the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' [Citations omitted.];

"(3) That the defendant's conduct was the proximate cause of plaintiff's psychic injury; and

"(4) That the resultant emotional distress was serious, such that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances * * *.' [Citations omitted.]" *Uebelacker v. Cincom Sys., Inc.* (1988), 48 Ohio App.3d 268, 275–276, 549 N.E.2d 1210, 1219.

Neal contends that because of her weakened physical condition and hypertension the written reprimand, reassignment of job duties, and delivery of a predisciplinary conference notice for failing to follow her supervisor's orders and for becoming loud and belligerent were actions a reasonable person could conclude were done with the intent to inflict emotional distress. We hold that Neal failed to prove that her employers' conduct was such that they intended to cause Neal emotional distress or knew or should have known that the legitimate business steps they took would cause Neal emotional distress. Further, the conduct described was not so outrageous in character as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. In fact, the actions taken were according to the personnel manual or for the purpose of assuring that the payroll office would run efficiently. There is no evidence that Neal's alleged emotional distress was serious such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." *Paugh v. Hanks*

(1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765. We find Neal's fourth assignment of error to be without merit.

## V

In her seventh assignment of error Neal contends that a directed verdict was erroneous because the trial judge was an employee of defendant Hamilton County. We need not reach the merits of this fatuous assignment of error. This court has no authority to pass upon the disqualification of a judge of the court of common pleas or "to void the judgment of the trial court upon that basis." *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 442, 8 O.O.3d 438, 440, 377 N.E.2d 775, 776. If Neal believed the trial judge should have been disqualified for violation of the Code of Judicial Conduct, she should have sought disqualification pursuant to R.C. 2701.03, not ask this court to, in effect, void her judgment.

## VI

In her fifth assignment of error Neal contends that the trial court erred by *sua sponte* excluding testimony of another employee, Beulah Scott, because Scott's testimony was probative of (1) Turner's intent to discharge Neal in a way similar to that in which Scott was "discharged"; (2) the reasonableness of Neal's belief she was being constructively discharged; and (3) Turner's intent to inflict emotional distress.

Whether to exclude or admit evidence *sua sponte* is discretionary with the court. *Oakbrook Realty Corp. v. Blout* (1988), 48 Ohio App.3d 69, 548 N.E.2d 305. The trial court determined that the testimony of a nonhandicapped employee who left her employment with the payroll department before the alleged discriminatory conduct towards Neal began was irrelevant and nonprejudicial. In a case involving exclusion of testimony this court may determine only if the trial court abused its discretion. See *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. We hold the trial court did not abuse its discretion in excluding Scott's testimony. We agree with the trial court that the probative value of what Turner did to Scott, if anything, was substantially outweighed by the danger of prejudice as well as being irrelevant to the conduct between Turner and Neal. Evid.R. 402. See, *e.g., Schrand v. Fed. Pac. Elec. Co.* (C.A.6, 1988), 851 F.2d 152. Neal's fifth assignment of error is overruled.

## VII

Neal's sixth assignment of error, in which she contends that the court made its decision before hearing the evidence on her claim that the defendants retaliated

against her for filing a workers' compensation claim, which had been bifurcated for trial, is also overruled. At trial the judge stated, "I don't know what, if anything particular, to say about the workers' compensation issue. I feel exactly the same. If it takes a separate entry we'll use it." The entry granting directed verdict on the other claims specifically excludes Neal's retaliation claim.

The parties subsequently filed a second stipulation and waiver of hearing concerning that claim. Following review of the stipulation and the evidence submitted at trial on Neal's first, third, and fifth causes of action, the trial judge found no retaliation for filing the workers' compensation claim. This finding was entered on the court's docket separately from the entry granting directed verdict. We find no error since the record reflects no final determination was made on the retaliation claim until *all* evidence had been heard.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., HILDEBRANDT and GORMAN, JJ., concur.