Darwin W. **LANG**, Plaintiff,

v.

**D&J HOMES**, et al., Defendants.

No. 3:01cv306.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

---

Thomas Glasper, Dayton, OH, for Plaintiff.

Shawn Michael Blatt, Freund Freeze & Arnold, Dayton, OH, Timothy J. Abeska, Barnes & Thornburg, South Bend, IN, Maureen P. Haney, Frost Brown Todd LLC, Cincinnati, OH, for Defendants.

DECISION AND ENTRY SUSTAINING DEFENDANT FOUR SEASONS HOUSING, INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. # 43) AND SUSTAINING DEFENDANT D & J HOMES'S MOTION FOR SUMMARY JUDGMENT (DOC. # 45); DIRECTIVE TO DEFENDANT AND TO PLAINTIFF

RICE, District Judge.

Plaintiff Darwin W. Lang ("Plaintiff" or "Lang") purchased a manufactured home from Defendant D & J Homes ("D & J"),[1] which D & J had procured from Defendant Four Seasons Housing, Inc. ("Four Seasons"). Plaintiff became unsatisfied with numerous aspects of the transaction and brought the current action, alleging claims under Ohio statutory and common law, as well as a federal claim under 42 U.S.C. § 1981. D & J subsequently filed a counterclaim, bringing claims under Ohio law. Plaintiff avers that this Court has subject matter jurisdiction over this matter pursuant to its diversity jurisdiction, 28 U.S.C. § 1332. Given that Plaintiff is a citizen of Ohio and that each Defendant is either a citizen of the State of Indiana or a corporation incorporated in and having its principal place of business in the State of Indiana, and given that the amount in controversy exceeds $75,000.00, the Court agrees that the requirements set forth in § 1332 are satisfied. The Court notes, however, that, given that Plaintiff brings a claim under 42 U.S.C. § 1981, jurisdiction

---

1. In addition to the corporation D & J Homes, Plaintiff has also named two individual employees of D & J as Defendants, to wit: Jerry Jennings and Chris Thompson. Herein, "D & J" refers to each of these Defendants.

over Plaintiff's claims would also be proper under 28 U.S.C. §§ 1331 and 1367.

## I. Background[2]

Plaintiff is the owner of a hair salon who decided to purchase a manufactured home for his parents and himself and to operate his salon business out of that home. He contacted D & J, which is a seller of modular and manufactured homes, and discussed his business plan of having a "salon within the home" with Defendant Jerry Jennings, the owner-operator of D & J. On August 25, 1997, Plaintiff contracted to buy a Skyline brand modular home from D & J. The contract indicated that D & J would construct a manufactured home (the "home") with a specifically designed 24′ × 24′ addition to accommodate Plaintiff's salon business. Moreover, Plaintiff indicated that the design would need to include salon parking, restrooms and sidewalks. Although the contract provided that construction would begin in September, 1997, and end in October, 1997, delays were experienced due to a financing denial and because of a pre-existing lien on Plaintiff's property.

In the time between the completion of the financing and the commencement of the work, Plaintiff was informed by Defendant Chris Thompson, a representative of D & J, that the Skyline model home that he had originally selected was no longer available, because D & J had lost its franchise with Skyline Homes. Instead, the representative informed Plaintiff that D & J could provide him with a Four Seasons model home with virtually the same floor plan. Plaintiff did not object to this substitution (Deposition of Darwin W. Lang

("Lang Depo") (Doc. # 45, Exs.5–6) at 307) and a new contract was signed. Accordingly, on November 23, 1999, Jennings ordered the home from Four Seasons, and on December 8, 1999, D & J purchased the home from Four Seasons for $45,590.00. Plaintiff did not contract with Four Seasons for the home; instead, he purchased it directly from D & J for $65,616.00. Moreover, Four Seasons did not deliver the home to Plaintiff's property, nor did it set the home up. Nor, for that matter, did Plaintiff ever have any contact with anyone at Four Seasons.

Sometime during the modification of the home, one of the construction subcontractors[3] called Plaintiff the "n-word" and spat in his face (Lang Depo. at 176). Lang also believes that there was an ongoing joke about the length of the time that the job was taking.

Although construction of the home is now essentially complete, Plaintiff is dissatisfied with various perceived defects, including the presence of wood-eating ants, apparently known as "wiggers." D & J concedes that some work pertaining to fixtures and "other finishing touches" remains to be completed on Plaintiff's property. However, the construction-related portion of the dispute was submitted to arbitration on September 16, 2003, and the arbitrator ruled that D & J owes Plaintiff $15,934.00 for construction-related issues.

Plaintiff has not paid the purchase price on either the first or the second contract with D & J, although the home is currently on his property and he has full access to it.

Plaintiff filed an eight-count complaint, alleging the following: breach of contract (Count 1), or in the alternative, contract

---

**2.** For purposes of ruling on Defendants' Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party.

**3.** The Complaint refers to these subcontractors as the "John Doe Subcontractors."

rescission against D & J and Four Seasons (Count 2); tortious fraud and deceit against D & J (Count 3); intentional discrimination under 42 U.S.C. § 1981, the Fair Housing Act of 1968 and the Thirteenth Amendment to U.S. Constitution against all Defendants (Count 4); that the contract is unenforceable and seeking a declaratory judgment accordingly against D & J (Count 5); warranty violations under the Ohio Consumer Sales Practices Act against D & J and Four Seasons (Count 6); violation of "bait and switch" prohibitions under the Ohio Consumer Sales Practices Act against D & J and Four Seasons (Count 7); and intentional infliction of emotional distress against D & J and Four Seasons (Count 8).

D&J Homes subsequently filed a counterclaim (Doc. # 17), alleging breach of contract (Count 1); unjust enrichment (Count 2); and promissory estoppel (Count 3).

The matter is currently before the Court on the Motion for Summary Judgment of Four Seasons Housing, Inc. (Doc. # 43) and the Motion for Summary Judgment of Defendants D & J Homes, Jerry Jennings and Chris Thompson (Doc. # 45)

II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also*

*Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,*

889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

For the reasons that follow, summary judgment is proper on all claims, as to Four Seasons as well as the three D & J Defendants. When appropriate, the Court will analyze the claims separately with respect to each Defendant.

### A. *Breach of Contract*

Plaintiff brings claims for breach of contract (Count 1), or, in the alternative, for contract rescission (Count 2). The Court analyzes those claims together.

### 1. *D & J*

Plaintiff alleges that D & J breached the contract by failing to comply with the time-is-of-the-essence requirement of the contract and that it failed to construct the home in a workmanlike manner (Amended Compl. at ¶ 30).

The difficulty with Plaintiff's first argument is that the contract did not actually contain a time-is-of-the-essence provision.

Furthermore, Ohio courts indicate that, absent an express indication by the contracting parties to the contrary, the time of performance is not of the essence. *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763, 765 (Ohio App. 11 Dist. 1993). Moreover, even if time were of the essence in the contract at issue herein, D & J points to Plaintiff's numerous admissions during his deposition that the delays, the reasons for which included difficulty in obtaining a satisfaction and release of an old lien on Plaintiff's property as well as Plaintiff's being denied financing "one or two times" between 1997 and 1998, were his fault and not the fault of D & J. *See* Lang Depo. at 101, 113–115.

■ With respect to Plaintiff's dissatisfaction with the construction of the home itself, as D & J argues, these issues were addressed by the arbitration that was conducted in this matter, and which awarded Plaintiff $15,934.00. Plaintiff, however, appears to take issue with the conclusions of the arbitrator. However, in a prior entry, this Court overruled Plaintiff's Motion for the Re–Opening of Arbitration Process or, Alternatively, Allowing Said Additionally Pled Claims to Proceed to Trial. *See* Doc. # 51. Moreover, Plaintiff's argument that D & J "pretty much concede[d]" that there was a breach in this matter (Doc. # 48 at [5]) is incorrect. D & J's willingness to pay the amount determined by the arbitrator to be the cost of the work remaining on the home is simply not an admission that it breached the contract, given that Plaintiff agreed to submit the dispute regarding the outstanding construction work to arbitration. Accordingly, the issue of any remaining construction work is not the subject of the breach of contract claim herein.

In a similar vein, Plaintiff argues in his Response that the issues in the case *sub judice* are not "ripe for disposition by summary judgment [because] [t]here are many genuine issues of material fac[t] still remaining to be addressed" (*Id.* at [3] ). Plaintiff, however, does not indicate what said issues are. As explained *supra,* when the party moving for summary judgment has demonstrated the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to point to those portions of the record that do demonstrate the presence of a genuine issue of material fact. Having failed to do so, summary judgment is proper with respect to Plaintiff's claims for breach of contract (Count 1) and, in the alternative, for contract rescission (Count 2) as to D & J.

### 2. *Four Seasons*

Plaintiff's contract claims (for breach (Count 1) and rescission (Count 2)) as to Four Season can be dismissed easily. This is because, as Plaintiff himself has conceded, no contract ever existed between himself and Four Seasons.

Plaintiff cites a decision from the Supreme Court of Minnesota in an attempt to support his theory that he may hold Four Seasons liable for breach of contract despite the fact that Four Seasons was not a party to either of the contracts that Plaintiff entered into with D & J. *See Beck v. Spindler,* 256 Minn. 543, 99 N.W.2d 670, (Minn.1959). That decision, however, in addition to not having any binding authority on this Court's construction of Ohio contract law, deals with the necessity of privity (or lack thereof) in an action in tort for negligent manufacture of a chattel. Whether or not it has any relevance to Plaintiff's claim for warranty violations under Ohio statutory law (Count 6), it has absolutely no relevance to Plaintiff's contract claims.

Plaintiff presents no genuine issue of material fact that could enable a trier of fact to conclude that a contract existed

between himself and Four Seasons.[4] Accordingly, summary judgment is appropriate with respect to Counts 1 (breach of contract) and 2 (contract rescission) as to Four Seasons.

### B. *Tortious Fraud and Deceit*

Count 3 alleges that D & J "baited and switched" the original home contracted for and misrepresented the basis for the delays. Count 3 does not mention Four Seasons.

> Fraud is
>
> (a) a representation or, where there is a duty to disclose, concealment of a fact,
>
> (b) which is material to the transaction at hand,
>
> (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
>
> (d) with the intent of misleading another into relying upon it,
>
> (e) justifiable reliance upon the representation or concealment, and
>
> (f) a resulting injury proximately caused by the reliance.

*Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868 (Ohio 1998) (quotations and citations omitted).

Quite simply, there is no genuine issue of material fact as to whether D & J fraudulently substituted the Four Seasons home for the Skyline home, because Plaintiff admitted that he understood, when he signed the second contract, that he would be getting a Four Seasons home and not a Skyline home, and furthermore, Plaintiff accepted the change (Lang Depo. at 122–23). Moreover, although the dimensions of the Four Seasons home were not identi-cal to the Skyline home bargained for in the first contract, D & J agreed to add additional square footage to the home described in the second contract, and Plaintiff fully agreed to this (*Id.* at 136). Accordingly, there is no genuine issue of material fact as to whether D & J fraudulently deceived Plaintiff as to the type of home that he would be receiving, and summary judgment is proper.

### C. *Intentional Discrimination*

Count 4 alleges that the acts of John Doe Contractor, "as affirmed and ratified by the other Defendants herein," unlawfully discriminated against Plaintiff in connection with the sale of modular housing. Specifically, Plaintiff appears to allege that the act of the unknown contractor calling him the "n-word," as well as the fact that he was laughed at as if his situation were an ongoing joke, amount to intentional racial discrimination.

■ The Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, "makes it unlawful ... for any person to refuse to sell or otherwise make unavailable a dwelling to any person because of race." *Selden Apartments v. U.S. Dept. of Housing and Urban Development,* 785 F.2d 152, 159 n. 11 (6th Cir. 1986), *quoting Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1036 (2d Cir.1979). 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be

---

**4.** Plaintiff does not argue that he was a third-party beneficiary of the contract between D & J and Four Seasons and, in any case, the Court does not believe such to be the case. Instead, the contract between D & J and Four Seasons was merely for the sale of a product for assembly by D & J.

subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff also states the Thirteenth Amendment as a basis for his racial discrimination claim, but as D & J correctly observes, the protections of that amendment are enforced through federal statutes and not by the amendment itself. Accordingly, the Thirteenth Amendment itself can afford Plaintiff no relief in this matter.

▮ In cases alleging racial discrimination in housing under 42 U.S.C. §§ 1981 and 3601, courts are to apply the well-known burden-shifting test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Selden,* 785 F.2d at 159. Under that test, a plaintiff alleging discrimination first has the burden of showing a prima facie case of discrimination. If he is successful in doing so, the defendant then has the burden of articulating a legitimate, nondiscriminatory reason for the adverse action taken against the plaintiff. Thereafter, the burden returns to the plaintiff to show that the defendant's stated legitimate, nondiscriminatory reason is pretextual.

▮ A plaintiff establishes a prima facie case under either § 1981 or the Fair Housing Act by proving:

(1) That he or she is a member of a racial minority;

(2) That he or she applied for and was qualified to rent or purchase certain property or housing;

(3) That he or she was rejected; and

(4) That the housing or rental property remained available thereafter.

*Selden,* 785 F.2d at 159, *citing Sandford v. R.L. Coleman Realty Co., Inc.,* 573 F.2d 173, 175 (4th Cir.1978) (elements same under both the Civil Rights Acts, §§ 1981 and 1982, and Fair Housing Act of 1968, 42 U.S.C. § 3610(a)).

### 1. D & J

▮ In support of its motion for summary judgment, D & J insists that it took no action against him based on his race. The Court understands this argument to mean that, despite the use of racist epithets by some of D & J's subcontractors,[5] Plaintiff has offered no showing that D & J undertook any adverse action against Plaintiff because of his race. To be sure, even assuming, as the Court must, that Plaintiff was referred to with a racial epithet and that he perceived his situation to be the subject of an ongoing joke, there has been no connection established between those things and an adverse housing decision or a deprivation of an activity listed in § 1981.

In his Response, Plaintiff devotes not a single word to refuting D & J's argument or to arguing that he has presented a prima facie case of racial discrimination under § 1981 or the Fair Housing Act. Accordingly, he has failed to meet his burden, and summary judgment is appropriate on Count 4 as to D & J.

### 2. Four Seasons

Given that the allegedly racially discriminatory conduct complained of by Plaintiff was engaged in by subcontractors of D & J, Four Seasons may be liable to Plaintiff on his § 1981 and Fair Housing Act claims only if (1) Plaintiff could succeed on his claim against D & J; and (2) D & J's liability is imputed to Four Seasons. Four Seasons devotes its argument to the latter, insisting that it may not be liable for any discrimination engaged in by D & J. How-

---

**5.** D & J highlights the fact that Plaintiff in fact knew that the men who called him the racial epithet were not D & J employees. *See* Lang Depo. at 176–77.

ever, because the Court has concluded that no genuine issue of material fact exists as to whether Plaintiff could succeed against D & J, the Court does not find it necessary to determine whether liability could be imputed to Four Seasons. In any case, again, Plaintiff offers no argument as to a prima facie case of discrimination against Four Seasons. Accordingly, summary judgment is appropriate on Count 4 as to that Defendant.

### D. Declaratory Judgment As To Second Contract

Count 5 seeks a declaration from the Court that the second contract with D & J is invalid. He proposes two separate grounds for this, to wit: that the contract constitutes an invalid novation for lack of consideration, and, in the alternative, that it was entered into under fraud, coercion and duress, and therefore was not voluntary. On its terms, Count 5 does not apply to Four Seasons.

■■■ In Ohio, a contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration. *McGlothin v. Huffman,* 94 Ohio App.3d 240, 244, 640 N.E.2d 598, 601 (Ohio App. 12 Dist.1994), *citing* 18 Ohio Jurisprudence 3d (1980) 207, Contracts, Section 285; *Garrett v. Lishawa,* 36 Ohio App. 129, 172 N.E. 845 (Ohio App. 1 Dist.1930). Knowledge and consent to the terms of the novation need not be express, but can be implied from the circumstances or a party's conduct. *Natl. City Bank v. Reat Corp.,* 64 Ohio App.3d 212, 216, 580 N.E.2d 1147, 1149 (Ohio App. 8 Dist.1989). The discharge of the existing obligation of a party to a contract is sufficient consideration for a contract of novation. *Bacon v. Daniels,* 37 Ohio St. 279, 282 (Ohio 1881).

■■ As D & J argues, it is clear from Plaintiff's deposition testimony that, at the time that D & J sought to substitute the Four Seasons home for the Skyline home, Plaintiff not only understood the substitution, but that he did not object to it. Moreover, as noted *supra,* although the dimensions of the Four Seasons home were not identical to the Skyline home bargained for in the first contract, D & J agreed to add additional square footage to the home described in the second contract, and Plaintiff fully agreed to this (Lang Depo. at 136).

This also defeats Plaintiff's argument that the contract is invalid because it is based on a pattern of fraud. Rather than being fraudulent, the substitution was obtained by the mutual assent of the parties.

Again, Plaintiff fails to offer any direct refutation of this in his Response to D & J's motion for summary judgment. Accordingly, summary judgment is proper as to Count 5.

### E. Ohio Consumer Sales Practices Act

Counts 6 and 7 allege violations of Ohio's Consumer Sales Practices Act ("CSPA"). Specifically, Count 6 alleges under the CSPA that Four Seasons was negligent in the construction, modification and delivery of the home and that it had breached the "explicit and implied warranty of merchantability that said home/business office would be fit for the ordinary purposes for which such goods are used" (Compl. at ¶ 49). Count 7 alleges that D & J engaged in an illegal "bait and switch" by substituting the Four Seasons home for the Skyline Home.

The CSPA prohibits unfair, deceptive or unconscionable acts or practices in consumer transactions. The statute defines consumer transactions as "a sale, lease, assignment, award by chance, or other

transfer of an item of goods, a service, a franchise, or an intangible, to an individual *for purposes that are primarily personal, family, or household* ..." Ohio Rev.Code § 1345.01 (emphasis added).

Ohio courts interpreting the CSPA look to the "objective manifestations of the parties, as set forth by the totality of the circumstances" to determine the limits of a consumer transaction. *Jackson v. Krieger Ford, Inc.,* 1989 WL 29351, at *3 (Ohio App. 10 Dist. March 28, 1989). In *Copeland v. Niedhamer,* 1987 WL 10950 (Ohio App. 2 Dist. May 6, 1987), the plaintiffs sued under the CSPA after their property was re-roofed in a manner they found to be unsatisfactory. The property was a home, the upstairs of which was rental property and the downstairs of which was a second-hand shop. The court acknowledged that their motivation for having the property re-roofed "may have been somewhat 'personal,' [but] the primary person for repairing the premises was to protect the property which housed their business." *Id.* at *4.

■ Both D & J and Four Seasons insist that, insofar as Plaintiff expressly sought the home for the purpose of opening a salon, his is not a "consumer transaction" as defined by the statute. The Court agrees that Plaintiff's desire to operate a salon in the home removes the transaction from the definition of consumer transactions supplied by the statute because Plaintiff purchased the home not for purposes primarily personal, family or household, but for purposes that were expressly related to his salon business. Again, Plaintiff offers no response and supplies no evidence tending to show that his purposes fit within the statutory definition.

■ Regardless, even if the transaction at issue herein were covered by the CSPA, summary judgment would be proper. Plaintiff's allegations against Four Seasons are based on structural deficiencies that are covered by the arbitration. Given that the Arbitrator has already ordered Defendants to pay Plaintiff $15,934.00 in satisfaction of those claims, Plaintiff may not recover for them again under the CSPA. Additionally, Plaintiff's allegations against D & J under the CSPA are based on the "bait and switch" allegation. For the reasons provided with respect to Plaintiff's fraud claim, no genuine issue of material fact exists as to whether D & J engaged in a "bait and switch."

Accordingly, summary judgment is proper with respect to Plaintiff's claims under the Ohio Consumer Sales Practices Act (Counts 6 and 7) as to both D & J and Four Seasons.

F. *Intentional Infliction of Emotional Distress*

Count 8 alleges that, due to the "flagrant and egregious fraud (e.g., 'bait and switch'), [and] other negligent acts and contract violations as heretofore pled, resulting in the added strains of four years built-up frustration," D & J and Four Seasons are liable for intentional infliction of emotional distress.

■ The Ohio Supreme Court has adopted the Restatement's definition of this tort: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America,* 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671 (Ohio 1983), *quoting* Restatement of the Law 2d, Torts (1965) 71, Section 46(1). As such, Ohio courts have distilled four requisite elements from that definition. Accordingly, in order to prevail on a

claim for intentional infliction of emotional distress, a plaintiff must prove:

> (1) That the defendant either intended to cause the plaintiff emotional distress or that he knew or should have known that his actions would cause the plaintiff emotional distress;
>
> (2) That the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community';
>
> (3) That the defendant's conduct was the proximate cause of plaintiff's psychic injury; and
>
> (4) That the resultant emotional distress was serious, such that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'

*Neal v. Hamilton Cty.*, 87 Ohio App.3d 670, 679, 622 N.E.2d 1130, 1137 (Ohio App. 1 Dist.1993) (citations omitted). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement (Second) of Torts § 46 cmt. d (1965).

■ Plaintiff claims that his inability to move into the home and get his business running made him feel "almost like a mockery," and that the delays have prevented his father from moving in with him, which makes him feel like he hasn't lived up to being the son that he wanted to be. Although he blames the problems surrounding the home with depression and strained relationships he has experienced, he has not sought medical treatment or psychological counseling.

The Ohio Supreme Court has indicated that the emotional injury that a plaintiff must show needs to be "both severe and debilitating." *Paugh v. Hanks,* 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (Ohio 1983). The Sixth Circuit, in applying this standard to a claim for intentional infliction of emotion distress under Ohio law, has sustained summary judgment where the plaintiff's emotional distress consisted of sleepless nights, a withdrawn feeling and the impression that she was not the same person she had been prior to her distress. *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 318 (6th Cir.1989).

Both sets of Defendants urge that, for the same reasons, summary judgment is proper here. Again, Plaintiff offers no argument with respect to his intentional infliction of emotional distress claim. For this reason, and for the reason that the Court agrees that there exists no genuine issue of material fact that Plaintiff's emotional suffering rises to the high standard required by Ohio courts, summary judgment is proper.

## IV. *Conclusion*

For the reasons assigned herein, summary judgment is proper on all of Plaintiff's claims as to D & J Homes, Jerry Jennings, Chris Thompson and Four Seasons Housing, Inc. Remaining in this case is the counterclaim asserted by D & J Homes against Plaintiff (Doc. # 17). Accordingly, D & J is directed, within 10 days of the date of this entry, to indicate whether it wishes to proceed with the counterclaim.

Additionally, Defendants John Doe Subcontractors have not filed an appearance in this matter, and in the three years since this action was commenced, Plaintiff has not moved to amend the Complaint to substitute the actual individuals who committed the acts allegedly done by the John Doe Subcontractors. Accordingly, Plaintiff is directed, within 10 days of the date

of this entry, to show cause why this matter should not be dismissed as to said Defendants.